[No. B057290. Second Dist., Div. Five. Feb. 2, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES HAYWARD SALLY et al., Defendants and Respondents.

**COUNSEL**

Ira Reiner and Gil Garcetti, District Attorneys, Maurice H. Oppenheim and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, under appointment by the Court of Appeal, Albert J. Menaster, Robert Noguchi, Alex Ricciardulli, Laurence

Sarnoff and Douglas J. Goldstein, Deputy Public Defenders, for Defendants and Respondents.

## OPINION

BOREN, J.*—The People appeal following the defendants' successful motion to set aside the information pursuant to Penal Code section 995.[1] The motion was granted on the grounds that multiple hearsay evidence introduced by the People through a police officer's testimony at the preliminary hearing was inadmissible under section 872, subdivision (b) (enacted as a part of Prop. 115, an initiative measure adopted June 5, 1990)[2] and, consequently, there was insufficient evidence to justify the magistrate's order holding the defendants to answer. Although we find that the multiple hearsay testimony of Deputy Sheriff Ronald Payne at the preliminary hearing was inadmissible pursuant to *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063 [2 Cal.Rptr.2d 160, 820 P.2d 262], other evidence was presented by the People sufficient to establish a prima facie case. We therefore reverse the order of the superior court setting aside the information.

### FACTUAL AND PROCEDURAL BACKGROUND

The district attorney charged defendant James Hayward Sally with grand theft (§ 487, subd. 1) of aluminum rims from D & S Metal Polishing, and charged defendants Phillip Cathcart and Justin Wayne Kemp with receiving stolen property (§ 496, subd. (a)), aluminum rims. At the preliminary hearing on September 20, 1990, the prosecutor called two witnesses, Los Angeles County Deputy Sheriffs Ronald Payne and Philip Esau.

Over repeated objections to multiple level hearsay, the prosecutor directed Deputy Payne to a page in a police report referring to a person named Alexander Le Flore and elicited from Deputy Payne testimony that Le Flore

---

*Presiding Justice of the Court of Appeal, Second District, Division Two, sitting under assignment by the Chairperson of the Judicial Council.

[1]Unless otherwise stated, all section references are to the Penal Code.

[2]Section 872, subdivision (b) provides as follows: "Notwithstanding Section 1200 of the Evidence Code [the hearsay rule], the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

had contacted Deputy Esau on September 5, 1990.[3] Deputy Payne indicated that at an address on South Alameda Avenue, Le Flore identified 40 aluminum rims which belonged to a business, D & S Metal Polishing, of which Le Flore was a co-owner. Deputy Payne further testified that Le Flore said that these 40 aluminum rims had been stolen from his business on the evening of September 4, 1990. Deputy Payne also testified that he was not at the location where the three defendants were arrested, that he did not see any of the items allegedly stolen, that he never had any conversations with Le Flore, and that he never had any conversations with the three defendants in the present case.

Deputy Esau, assigned to the Firestone sheriff's station, also testified at the preliminary hearing. He stated that on September 5, 1990, he saw defendant Cathcart carrying an aluminum rim from a truck to a loading dock on South Alameda Avenue. The truck was parked adjacent to a business establishment near the loading dock, and the truck bed contained approximately 17 more aluminum rims. After Deputy Esau detained Cathcart, Cathcart stated to him that the rims were probably stolen but that he did not steal them. Deputy Esau testified that during Cathcart's detention, defendant Kemp approached him as the deputy was looking in the back of the truck and claimed that the truck belonged to him. Kemp also indicated to the deputy that he did not know from where the rims had come but also stated that he thought that they had probably been stolen.

Deputy Esau further testified that after returning to the sheriff's station on September 5, 1990, Sally telephoned the sheriff's station, spoke with Deputy Esau, and gave the officer the address of his residence on South Hooper Avenue. Deputy Esau went to Sally's residence, where he found an aluminum rim which Sally told the deputy he had taken, as well as the other rims found in Kemp's truck. Sally admitted to Deputy Esau that he had stolen the rims, stated that he had taken them from the sidewalk next to a business, and directed the deputy to the business, D & S Metal Polishing.

At the conclusion of the preliminary hearing, the court denied a motion to dismiss for insufficiency of the evidence. In the superior court, the defendants moved to set aside the information pursuant to section 995. The court granted the motion, ruling that, although Proposition 115 is constitutional, it does not permit multiple levels of hearsay to be admitted into evidence at the preliminary hearing. The People appeal from the order setting aside the information.

---

[3]Why the prosecution did not directly examine Deputy Esau regarding Le Flore's statements is not apparent in the record.

DISCUSSION

In *Whitman* v. *Superior Court, supra,* 54 Cal.3d at pages 1072 to 1074, our Supreme Court interpreted Proposition 115 and determined that its provisions did not permit multiple level hearsay at a preliminary hearing and therefore that a designated "reader" who has no personal knowledge about the case is not permitted to testify at a preliminary hearing. To "allow testimony by noninvestigating officers or readers would seemingly sanction a form of double or multiple hearsay beyond the contemplation of the framers of, and voters for, Proposition 115. . . . [W]e doubt that Proposition 115 was intended to sanction a procedure whereby a noninvestigating officer, lacking any personal knowledge of the matter, nonetheless would be permitted to relate not only what the investigating officer told him or her, but also what the other witnesses told the investigating officer. It is noteworthy that although Proposition 115 created an exception to the basic hearsay rule . . . the measure did not purport to create a similar exception for the multiple hearsay rule . . . ." (*Id.* at p. 1074.)

In *Whitman,* the Supreme Court's proscription against use of readers and multiple hearsay avoided constitutional questions regarding the reliability of evidence and a defendant's inability to "meaningfully cross-examine the testifying officer regarding the circumstances under which the out-of-court statement was made." (54 Cal.3d at p. 1074.) Proposition 115 therefore, as interpreted by *Whitman,* creates an exception to the hearsay rule to allow a qualified investigating officer to testify concerning otherwise inadmissible hearsay statements made to him by persons he has interviewed; however, "Proposition 115's hearsay provisions were intended to foreclose the testimony of a noninvestigating officer lacking *personal* knowledge of either the crime or the circumstances under which the out-of-court statements were made." (*Whitman, supra,* 54 Cal.3d at p. 1073, italics added.)

This court has specifically found that *Whitman* indeed holds that "multiple level hearsay is inadmissible at a preliminary examination even when offered by an otherwise qualified investigating officer." (*Montez* v. *Superior Court* (1992) 4 Cal.App.4th 577, 586 [5 Cal.Rptr.2d 723].) Other Courts of Appeal have likewise interpreted *Whitman* to preclude multiple hearsay testimony at a preliminary hearing. (See *Tu* v. *Superior Court* (1992) 5 Cal.App.4th 1617, 1622 [7 Cal.Rptr.2d 758] [Second Dist., Div. One]; *Shannon* v. *Superior Court* (1992) 5 Cal.App.4th 676, 682 [7 Cal.Rptr.2d 47] [Second Dist., Div. Seven]; *People* v. *Wimberly* (1992) 5 Cal.App.4th 439, 445-447 [6 Cal.Rptr.2d 800] [same].) Accordingly, consistent with

the customary rules of appellate review after the grant of a section 995 motion (see *Montez* v. *Superior Court, supra,* 4 Cal.App.4th at pp. 583-584), we review the admissible, nonmultiple hearsay evidence at the preliminary hearing in the present case to determine if the magistrate properly held the defendants to answer. (See *People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

In the present case, although Deputy Esau's testimony as to the defendants' statements was admissible under section 872, subdivision (b), and is not directly challenged on appeal, Deputy Payne's testimony is another matter. Deputy Payne did not identify himself as an investigating officer assigned to the case, did not talk to any defendant, did not talk to any civilian witness, and did not visit the scene of the crime or see any evidence seized in connection with the case. Deputy Payne had virtually nothing to do with this case other than apparently to read a police report or obtain statements from the deputies who actually investigated the case. Deputy Payne thus had no direct knowledge of the crime or the circumstances under which Le Flore made his out-of-court statements. Le Flore's statements, as related by Deputy Payne's testimony, were thus double hearsay statements and should not have been admitted at the preliminary hearing.

Once the testimony of Deputy Payne regarding Le Flore's statements concerning the theft is excluded, the only evidence in the record regarding the legal status of the wheel rims (i.e., that they were in fact stolen) is the testimony of Deputy Esau relating the statements of defendant Sally regarding theft of the rims. In every criminal prosecution, the prosecutor must establish the *"corpus delicti,* i.e., the *body* or *elements of the crime"*; that is, evidence of the fact of an injury or loss caused by a criminal agency. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 136, p. 152.) The corpus delicti for the crime of theft requires an unlawful taking and asportation of the property, and for the crime of receiving stolen property it requires proof that the property in question was obtained by theft. (2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) §§ 576, 625, pp. 653, 704.)

The so-called corpus delicti rule of evidence generally provides that evidence of the extrajudicial admission of the defendant is not admissible unless the corpus delicti of the crimes charged is established by other evidence. (See 1 Witkin & Epstein, Cal. Criminal Law, *supra,* §§ 137-139, pp. 153-156.) This evidentiary rule has been applied to preliminary examinations and to prevent prosecutors from using the statement of one defendant

to establish the corpus delicti against a codefendant. (*Jones* v. *Superior Court* (1979) 96 Cal.App.3d 390, 396-397 [157 Cal.Rptr. 809].)

 On its face, the statement of defendant Sally as related in the testimony of Deputy Esau provides sufficient proof for the theft element of the corpus delicti required for the crimes charged in this case, if defendant Sally's statement is not excluded pursuant to the corpus delicti rule of admission of evidence. On appeal, the district attorney contends that pursuant to Proposition 115[4] the corpus delicti rule no longer applies to preliminary examinations. We decline to reach that issue in this case.[5] At no time during the preliminary examination in this case did any of the defendants object to the testimony of Deputy Esau or argue that the evidence was insufficient on the ground of the so-called corpus delicti rule. Neither in the moving papers nor in argument before the superior court on the section 995 motion did defendants assert the corpus delicti rule.

In view of the fact the record suggests that Deputy Esau could have properly related the witness statements of Alexander Le Flore to establish the stolen nature of the wheel rims, we find the failure to object to the admission of Deputy Esau's testimony and to assert insufficiency of the evidence based on the corpus delicti rule to be fatal to defendants' positions. Because they failed to object on the ground of violation of the corpus delicti rule, defendants may not on appeal, and for the first time, rely on that rule in this case. (*Montez* v. *Superior Court, supra,* 4 Cal.App.4th 577, 580, fn. 2.)[6] A defendant cannot on review complain of insufficiency of evidence based on improper admission of corpus delicti evidence where defendant omitted to interpose a specific objection on the ground of the corpus delicti rule, especially when "[i]t may well be that 'proof of the corpus delicti was [otherwise] available . . . .' [*People* v. *Mitchell* (1966) 239 Cal.App.2d 318, 323 [48 Cal.Rptr. 533].]" (*People* v. *Wright* (1990) 52 Cal.3d 367, 404 [276 Cal.Rptr. 731, 802 P.2d 221].) Accordingly, the corpus delicti was sufficiently established at the preliminary examination, and the section 995 motion should have been denied.

---

[4]Proposition 115 is the ballot initiative measure entitled "Crime Victims Justice Reform Act." It was adopted by California voters at the June 5, 1990, Primary Election. (See *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077].)

[5]The concurring opinion in *People* v. *Culton* (1992) 11 Cal.App.4th 363, 373 et seq. [14 Cal.Rptr.2d 189] offers the view that the corpus delicti rule has been abrogated by article I, section 28, subdivision (d) of the California Constitution. (Prop. 8: "Right to Truth-in-Evidence.")

[6]Only defendant Sally has in fact asserted on appeal the corpus delicti rule; the other two defendants have failed to file a respondent's brief.

## DISPOSITION

The order setting aside the information is reversed.

Turner, P. J., and Grignon, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 21, 1993.