131 Cal.Rptr.2d 801 (2003)
107 Cal.App.4th 147
The PEOPLE, Plaintiff and Respondent,
v.
Donald BARKER, Defendant and Appellant.
No. A093759.
Court of Appeal, First District, Division Three.
March 18, 2003.
Rehearing Denied April 8, 2003.
Review Granted June 11, 2003.
*804 Richard Such, First District Appellate Project, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.
McGUINESS, P.J.
A jury convicted appellant Donald Barker of one count of willful failure to register as a sex offender within five working days of his birthday, in violation of Penal Code section 290, subdivision (g)(2).[1] Having dismissed in the interests of justice nine of appellant's ten prior convictions for purposes of the Three Strikes Law, the court sentenced him to state prison for a total *805 term of nine years. On appeal, appellant contends we must reverse his conviction because (1) the trial court failed to instruct the jury correctly on the knowledge element of a section 290 violation; (2) the trial court erred prejudicially by instructing the jury that forgetting the statutory registration requirement was not a defense to the charge; (3) the trial court denied appellant's due process rights by so instructing the jury after it had allowed appellant to base his defense on having forgotten to register; and (4) there was insufficient evidence independent of his own extrajudicial admissions to establish the actual date of appellant's birthday for purposes of conviction. We conclude that to the extent the trial court did err in instructing the jury, any possible error was not prejudicial beyond a reasonable doubt; the trial court's instruction on forgetting was neither erroneous nor misleading; appellant waived his objection to the use of his own extrajudicial admissions to establish the date of his birth; and there was sufficient evidence to support appellant's conviction without reference to his own extrajudicial statements. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
Appellant was convicted of forcible rape in March 1979. As a result of this conviction, he was required pursuant to section 290 annually to update his registration as a sex offender with the police department of the jurisdiction in which he resided. As reflected by the records of the San Mateo City Police Department, as stated on appellant's probation report, and as admitted by appellant himself, appellant's date of birth was March 5, 1950. At the time relevant to this case, appellant was consequently obliged under the terms of section 290 to update his sex offender registration within five working days of March 5 every year.
As shown by the files of the California State Department of Justice and the San Mateo City Police Department, appellant registered five times as a sex offender with different jurisdictions, most recently with the San Mateo Police Department on August 26, 1999. The registration form signed by appellant on that date states that his date of birth was March 5, 1950, and his place of residence was 15 Ninth Avenue in San Mateo. It was the standard procedure in the San Mateo City Police Department to go over the notification material on the registration form with registrants before they signed and initialed it.
Immediately over appellant's signature on the form is a printed statement expressly declaring appellant's actual understanding of his mandatory obligations under section 290. In pertinent part, this statement is as follows: "I am registering in compliance with Section 290. . . . I understand my requirement as stated in the appropriate code sections. When registering pursuant to [section] 290 PC my requirement to register is for life and I must, within 5 working days: register with the agency having jurisdiction over my residence address. . . . Annually within five working days of my birthday, I must update my registration address. . . ." On another form entitled "Registration Change of Address/Annual Update," appellant again signed a statement stating that "I have been notified of my duty to register" as a convicted sex offender under section 290. On the reverse of this form, appellant initialed 16 specific statements acknowledging that he had received notice that, among other things, his "responsibility to register is a lifetime requirement"; he was required to register as a sex offender within five working days with the local law enforcement agency having jurisdiction of his residence every time he changed his address; and that he must *806 annually, within five working days of his birthday, update his registration at the law enforcement agency having jurisdiction over his location or place of residence.
In early March 2000, San Mateo Police Officer Al Baccei was assigned to process the registration of convicted sex offenders within the jurisdiction of the San Mateo Police Department. While checking to see if the Department's sex offender registrations were current, he noticed that appellant's birthday was March 5. As a result, the "window" for appellant to register was from Monday, February 28, 2000, through Friday, March 10, 2000.
On Monday, March 13, 2000, after appellant had failed to register within the statutory time period, Officer Baccei attempted to telephone him at his last known address at Project 90, a men's residential alcohol and recovery program where appellant had been living since August 1999. Appellant returned Officer Baccei's telephone call about 15 minutes later. They arranged to meet each other at the Police Department later that same day to discuss appellant's registration.
Appellant came to the Police Department within an hour of the telephone call. Officer Baccei's interview with appellant was tape recorded and subsequently transcribed. In the interview, appellant affirmed that his date of birth was March 5, and acknowledged that he was required to comply with the annual registration requirement within five days of his birthday. Asked why he had not called to make an appointment to register, appellant said it was "because I'm in a program. I'm a house manager. . . . And it keeps me busy all the time." Although appellant acknowledged his awareness that he was required "once a year" to register "on my birthday," he failed to do so this time because he was "too busy." Appellant further explained: "Well, you know what, I totally forgot about it, I'm not going to make up no excuses." In addition, appellant told Officer Baccei that although he had been living at 15 Ninth Avenue when he last registered on August 26, 1999, he had moved to 14 South Norfolk Avenue about a month before the date of the interview on March 13, 2000. Appellant acknowledged knowing that he was required to notify the Police Department whenever he changed his residence. Asked whether he had failed to notify the police about this change of address because he "[j]ust forgot or [was] too busy," appellant stated that he had "no excuse" for his failure. Asked if the police had read the registration requirements to him the last time he had updated his registration, appellant denied that they had been read to him. Appellant acknowledged having read the requirements before signing and initialing the form, "but vaguely." Officer Baccei placed appellant under arrest for failing to register in accordance with the time requirements of section 290.
David Meeds, program director at Project 90, testified that both 15 Ninth Avenue and 14 South Norfolk Avenue were addresses of rehabilitation facility residences at which appellant had been housed since joining the program in August 1999. He also explained that after successfully completing the program in December 1999, appellant had received special training and become a house manager. In his defense, appellant offered the testimony of Meeds and James Stansberry, the executive director of Project 90, regarding appellant's duties as house manager and his full schedule involving 16 to 18 hours of work on a typical work day.
By information filed on April 10, 2000, and amended on October 11, 2000, appellant was charged with two counts of willfully failing to register as a sex offender in violation of section 290, subdivision (g)(2), with 10 prior convictions alleged for purposes *807 of the Three Strikes Law and three priors alleged for purposes of section 667.5, subdivision (b). Count one charged appellant with failing to update his registration within five working days of his birthday; count two charged him with failing to do so within five working days of changing his residence.
Jury trial commenced on October 10, 2000. On October 13, the jury found appellant guilty of failing to register within five working days of his birthday as charged in count one, but acquitted him of the charge in count two. Appellant waived jury trial on the priors, and the trial court found all the alleged prior convictions true. After denying appellant's motion for a new trial, the trial court dismissed all but one of appellant's prior "strike" convictions in the interests of justice pursuant to section 1385. It then sentenced appellant to state prison for a total term of nine years as follows: the upper term of three years on count one, doubled under the Three Strikes Law to six years, plus three consecutive one-year terms as to the prior prison terms charged pursuant to section 667.5, subdivision (b). This appeal timely followed.

INSTRUCTIONS ON KNOWLEDGE AND WILLFULNESS
Appellant first contends that the trial court erred in violation of the federal and state constitutions by failing to give correct jury instructions on the element of knowledge, and instead instructing that ignorance of or forgetting the law is not a defense to a charge of violating the registration requirements under section 290. We conclude the instructions given by the trial court were correct and not misleading. To the extent the trial court's instructions were either misleading or erroneous, we conclude the error was harmless beyond a reasonable doubt.
We begin with the requirements of the statute at issue. As amended in 1996, 1997 and 1998, and in effect at the time appellant registered in August 1999, section 290 provided in pertinent part that every person convicted of an enumerated sex offense is required "for the rest of his . . . life while residing in . . . California . . . to register . . . within five working days of coming into, or changing his . . . residence or location within, any city, county, or city and county . . . in which he . . . temporarily resides." (§ 290, former subd. (a)(1)(A), as amended by Stats.1996, ch. 909, § 2; Stats.1997, ch. 821, § 3; Stats.1997, ch. 821, § 3.5; and Stats.1998, ch. 930, § 1.1; see § 290, present subd. (a)(1)(A).) In addition, "[beginning on his . . . first birthday following registration or change of address, the person shall be required to register annually, within five working days of his . . . birthday, to update his . . . registration . . ., including, verifying his . . . name and address, or temporary location, on a form as may be required by the Department of Justice." (§ 290, former subd. (a)(1)(C), as amended by Stats.1997, ch. 821, § 3.5 and Stats.1998, ch. 930, § 1.1; see § 290, present subd. (a)(1)(D).) A person required to register because of a felony conviction who "willfully violates" the registration provisions "is guilty of a felony and shall be punished by imprisonment in the state prison for 16 months, or two or three years." (§ 290, former subd. (g)(2), as amended by Stats.1994, ch. 867, § 2.7; see § 290, present subd. (g)(2).)
The trial court instructed the jury on the elements of the charged offense, telling them that in order to convict appellant the prosecution was required to prove that appellant "was notified" of the statutory registration requirements of section 290, and that he "willfully failed to register with the law enforcement agency where he lives within five working days of his birthday." With regard to the element of willfulness, the trial court instructed the jury *808 in the language of CALJIC No. 1.20 that "[t]he word `willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question. The word "willfully' does not require any intent to violate the law, or to injure another, or to acquire any advantage." In addition, the trial court instructed on the concurrence of conduct and general criminal intent in accordance with CALJIC No. 3.30, as follows: "In the crime[s] charged in the Information there must exist a union or joint operation of act or conduct and general criminal intent. General intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."
Appellant contends that in giving the above instructions, the trial court committed at least two "major instructional errors": (1) it failed to include in its instructions on willfulness the requirement that appellant be proven to have had actual knowledge of his duty to register; and (2) by instructing on general criminal intent in accordance with CALJIC No. 3.30, it effectively instructed the jury that "ignorance of the law is not an excuse." In support of its argument, appellant cites our Supreme Court's opinion in People v. Garcia (2001) 25 Cal.4th 744, 107 Cal.Rptr.2d 355, 23 P.3d 590. That decision held that actual knowledge of the duty to register is an element of any charge of violating the registration requirements of section 290; a failure to register did not violate section 290 if the defendant had no actual knowledge of the registration requirement; and in any case charging a violation of section 290, it is error to give an instruction that "`ignorance of the law is no excuse.'" (Id. at pp. 752-754, 107 Cal.Rptr.2d 355, 23 P.3d 590.)[2]
In addition, appellant cites the recently published decision of People v. Edgar (2002) 104 Cal.App.4th 210, 127 Cal. Rptr.2d 662. In Edgar, Division Two of this court concluded that "like the `"ignorance of the law is no excuse"' instruction (CALJIC No. 4.36) given in Garcia, the general intent instruction given here (CALJIC No. 3.30) `on its face would allow the jury to convict [appellant] of failing to register even if he were unaware of his *809 obligation to do so.' [Citation.]" (Edgar, supra, 104 Cal.App.4th at p. 219, 127 Cal. Rptr.2d 662.) On this basis, the Edgar court held that the same instructions given in this case  i.e., CALJIC Nos. 1.20 and 3.30, in combination with general instructions on the elements of the offense under section 290  "were erroneous in that they failed to clearly state that a conviction required actual knowledge of the duty to register." (Ibid.)[3]
The trial court's instructions must be construed together as a whole. (People v. Castillo (1997) 16 Cal.4th 1009, 1016, 68 Cal.Rptr.2d 648, 945 P.2d 1197.) On our reading, the instructions sufficiently advised the jury of the necessary elements of the charged offense, including actual knowledge. Thus, the trial court instructed the jury not only that the prosecution was required to prove that appellant "willfully" failed to register, but that in this context "willfully" meant the prosecution had to prove beyond a reasonable doubt that appellant had "a purpose or willingness . . . to make the omission in question." (CALJIC No. 1.20, italics added.) This instruction simply and correctly restates the statutory definition of "willfully" as set forth in section 7, subdivision 1.[4] *810 As the Supreme Court stated in Garcia, "one cannot purposefully fail to perform an act without knowing what act is required to be performed." (Garcia, supra, 25 Cal.4th at p. 752, 107 Cal.Rptr.2d 355, 23 P.3d 590.) By implication, therefore, the trial court's instruction on willfulness informed the jury that in order to convict appellant of failing to register, the prosecution had to prove that appellant had knowledge of the act he was obligated to perform, and purposefully failed to comply with his annual registration requirement. (See People v. Johnson, supra, 67 Cal. App.4th 67, 71-73, 78 Cal.Rptr.2d 795.)[5]
Moreover, unlike in Garcia, the jury in this case was not instructed that "ignorance of the law is no excuse." (CALJIC No. 4.36; Garcia, supra, 25 Cal.4th at pp. 751, 754, 107 Cal.Rptr.2d 355, 23 P.3d 590.) Contrary to appellant's assertion, the instruction on general criminal intent given pursuant to CALJIC No. 3.30 did not so instruct the jury. CALJIC No. 3.30 does state that so long as an accused intentionally does that which the law declares criminal, he "is acting with general criminal intent, even though [he][she] may not know that [his][her] act or conduct is unlawful." However, this is a very different statement than one implying that a person accused of willfully failing to perform a legally required act need not know of the obligation he is legally required to perform, such as the duty to update a sex offender registration. CALJIC No. 3.30 does not convert a general intent offense into a strict liability one as to which ignorance of the law is no excuse; it simply states that a defendant need not intend to violate the law to be guilty. (People v. Johnson, supra, 67 Cal. App.4th at pp. 71-73, 78 Cal.Rptr.2d 795.) Section 290 is not a specific intent crime, and appellant does not so contend.[6] (Id. at p. 72, 78 Cal.Rptr.2d 795 [because section 290 simply prohibits willful failure to register and contains no other intent language, it "is unquestionably a general intent offense"].) There was therefore no error in instructing the jury, in effect, that appellant did not have to intend to violate section 290 to be convicted of failing to register.
In short, we conclude that, read in combination with the CALJIC No. 1.20 instruction on willfulness, the trial court's general intent instruction pursuant to CALJIC No. 3.30 did not mislead the jury. "The general intent instruction required an `intentional' failure to register. The 'willful' instruction required a `purpose or willingness' to make the omission." (People v. Johnson, supra, 67 Cal.App.4th at p. *811 73, 78 Cal.Rptr.2d 795.) Together, these two instructions correctly informed the jury that in order to be convicted of violating section 290, appellant had to have knowledge that he was required to register. There was no error.
Even if we were to conclude the trial court's use of the CALJIC No. 3.30 instruction wrongly informed the jury either that the prosecution did not have to prove appellant had actual knowledge of his duty to register or that ignorance of the law was no excuse  a conclusion which, we reiterate, we do not make  the question remains whether any such error would be prejudicial. Despite its holding that the trial court had erred both in failing to instruct on the element of actual knowledge and in giving an instruction that ignorance of the law was not a defense to the charge of failing to register under section 290, the Garcia court nevertheless concluded the error in that case was harmless beyond a reasonable doubt. The Supreme Court found the prosecution had presented "strong evidence" that the defendant actually knew of the registration requirements, based on his signing of the written notifications thereof and the jury's implied finding pursuant to other properly given instructions that the defendant had read and understood these notifications. (Garcia, supra, 25 Cal.4th at p. 755, 107 Cal. Rptr.2d 355, 23 P.3d 590.)
In the instant case, as appellant himself concedes, the undisputed evidence shows he was given actual notice of the registration updating requirement. Although notice alone does not prove actual knowledge of the registration requirement, there is also overwhelming evidence in the record that appellant did actually know about the annual updating requirement. The record shows that when he updated his registration in August 1999, appellant signed forms attesting that he had been notified and was aware of his lifetime obligation as a convicted sex offender under section 290 to update his registration annually "within 5 working days" of his birthday. In connection with the same registration update, appellant initialed no fewer than sixteen clearly legible and straightforward statements again acknowledging that he had received notice of his lifetime responsibility to register as a sex offender with local law enforcement agencies annually within five working days of his birthday and also within five working days of every change of his address.
Neither was this the first notification appellant had received of the registration requirements. The record shows appellant had signed numerous sex offender registration forms in the past, dating back to 1988. When he registered in 1998, he signed a form which specifically notified him of the then-new statutory requirement that he update his registration annually within five working days of his birthday. Similar forms signed by appellant in 1996 and 1997 also mentioned the yearly updating requirement. Finally, appellant's own statements to Officer Baccei on March 13, 2000, clearly show that appellant had actual knowledge of the annual registration updating requirement, even if that information may have "skipped" his mind. On the basis of this record, we conclude that there was no evidence on the basis of which a rational fact finder could find that appellant did not have actual knowledge of his duty to update his registration on his birthday. Thus, we conclude that any possible error in failing to instruct the jury on the knowledge element of section 290, or in giving the general intent instruction under CALJIC No. 3.30, was harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705; People v. Garcia, supra, 25 Cal.4th at p. 755, 107 Cal.Rptr.2d 355, 23 P.3d 590; People v. Flood (1998) 18 Cal.4th *812 470, 502-503, 76 Cal.Rptr.2d 180, 957 P.2d 869.)

FORGETFULNESS AS A DEFENSE
During jury deliberations, the trial court gave an additional instruction to the jury in response to the following written question sent by the jurors to the trial judge: "Is forgetting to regester [sic] a `willfull' [sic] act according to the law." After extended colloquy with both trial counsel, the trial court instructed that "forgetting to register by itself does not provide a defense to a charge of willful failure to register." Appellant argues that the trial court erred by instructing the jury during deliberations, in response to the jurors' own written question, that forgetting to register was not "by itself a defense to the charge of willful failure to register. In pursuing this argument, appellant urges that this court undertake a painstaking legal and factual analysis of the evidence to ascertain the precise degree of his own forgetfulness. Thus, he insists that it is not clear whether his obligation to update his registration had merely slipped his mind  in which case, it could be said he actually knew it, but had simply failed to bring that actual knowledge to mind at the appropriate time  or whether instead he had completely forgotten his registration obligation and had lost the ability to recall it altogether, and consequently might not be said to have actual knowledge thereof.[7]
Appellant's suggested exercise, although intellectually intriguing, is both factually and legally irrelevant. Factually, appellant's own statements to Officer Baccei clearly acknowledged his actual awareness of the requirement that he update his registration annually within five working days of his birthday. Although he claimed the requirements were not read to him when he signed the previous registration form in 1999, he admitted reading and "vaguely" remembering them. When Officer Baccei read all the detailed requirements and notifications to appellant again "so you remember them so we don't have any problems in the future," appellant said his recollection of them was "coming back" to him. The only excuse he offered for his failure to register was that his duties as a house manager at Project 90 kept him "too busy," so that he "totally forgot about it." Indeed, he expressly acknowledged that his failure to update his registration "was my fault." On their face, these statements conceded that appellant's actual knowledge of the annual registration requirement just slipped his mind, i.e. he simply failed to remember to update his registration when he needed to do so. As even appellant appears to acknowledge in his brief on this appeal, this kind of common, everyday forgetfulness does not negate the actual knowledge required for willfulness.
In any event, we are of the opinion that  as a matter of law  forgetting, by itself, does not negate willfulness for purposes of a charge of violating the registration updating requirement of section 290. Because one cannot forget something one does not already know, the fact one has forgotten something necessarily presumes actual knowledge. There is a fundamental difference between a claim, like the one made by the defendant in Garcia, that one did not know about the registration requirement, and the claim made by appellant in this case that he simply forgot to register. The latter claim in reality amounts to a tacit admission of actual knowledge of the registration requirement. *813 As stated in the recent opinion in People v. Cox (2002) 94 Cal.App.4th 1371, 115 Cal. Rptr.2d 123 (Cox): "[W]ithin this context one willfully fails to register when possessed of actual knowledge of the requirement he or she forgets to do so. [¶] . . . [¶] . . . [T]he Legislature has created a registration scheme that places strict demands not only on registrants but also on state and local agencies. . . . In the face of such rigorous notification and registration requirements, it is unreasonable to believe that . . . the Legislature intended that a mere lapse of memory would excuse a failure to register. There are simply some things that cannot be forgotten. To allow forgetfulness to excuse a failure to register, would serve, in this context, as an incentive not to remember." (Cox, supra, 94 Cal.App.4th 1371, 1376-1377, 115 Cal. Rptr.2d 123.)[8]
Section 290 imposes a statutory obligation to register and re-register at certain times and under enumerated conditions. As is the case with any legal obligation, inherent in that statutory mandate is the duty not to forget to perform it. In contrast to the kind of subjective "forgetfulness" defense argued by appellant here, under the statutory definition of "willfully" found at section 7, subdivision 1, an omission to act would not be "willful" if objective circumstances beyond the defendant's control prevented him from acting. For example, a debilitating injury, illness or mental infirmity might objectively prevent a defendant from registering in timely fashion, thereby rendering "unwillful" the defendant's failure to register in compliance with the strict time deadlines of section 290, and providing a defense whether or not the defendant had also simply forgotten *814 his obligation to register.[9] Mere forgetfulness, however, does not rise to the level of such an objective circumstance preventing compliance with the statute. Whether the obligation has simply slipped the individual's mind is essentially irrelevant, because he was at all times obliged not to let that happen. Without an objective circumstance preventing compliance with the statutory obligation, a mere subjective failure to remember to do so therefore remains "willful." (Cox, supra, 94 Cal.App.4th at pp. 1376-1377, 115 Cal. Rptr.2d 123; Cf. People v. Johnson, supra, 67 Cal.App.4th at p. 73, 78 Cal.Rptr.2d 795 [instructions permitted jury to find that failure to register was not willful, but the result of "misinformation and lack of transportation"].)
The dissent asserts that Cox reads the term "willfully" out of Penal Code section 290, and is in conflict with Garcia. We respectfully disagree. In the first place, we note that there is no California law or case authority holding that forgetfulness is a defense to a charged crime of willful omission to perform a statutory duty. The only case authority directly addressing this precise issue is Cox.
In this regard, we find the history of the Cox decision instructive. The original decision by Division One of the Fourth District Court of Appeal in People v. Cox was filed in November 1999. In August 2001, after ordering the decision depublished and granting review, the Supreme Court ordered the case transferred back with directions that the court of appeal vacate its prior decision and reconsider the appeal in light of Garcia. (People v. Cox, review granted, Feb. 16, 2002, S084020, cause transferred to Court of Appeal with instructions Aug. 8, 2001.) The court of appeal published its reconsideration of the appeal at Cox, supra, 94 Cal.App.4th 1371, 115 Cal.Rptr.2d 123, duly analyzing Garcia's impact, and holding squarely that forgetfulness is not a defense to a charge under section 290. It is that decision upon which we rely herein. Although the defendant again petitioned for review of that decision, the Supreme Court denied review and allowed the opinion to remain published. (Cox, supra, 94 Cal.App.4th 1371, review den. Mar. 20, 2002, S104197.) We view the court of appeal's published decision in Cox as the most recent, and therefore controlling, authority on this question.
In any event, we are in substantial agreement with the holding and result in Cox. Although under Garcia, knowledge is required for willfulness, forgetting a fact does not negate the preexisting knowledge thereof. To the contrary, forgetfulness requires the preexistence of knowledge, since one cannot forget something unless one already knows it. Knowledge is defined as "the fact of knowing a thing," or personal acquaintance with some fact or thing. (8 Oxford English Diet. (2d ed.1989) p. 517.) The opposite of knowledge is ignorance. Because knowledge of the registration requirement is a necessary element of the crime as defined by section 290, subdivision (g), in this instance ignorance of the law must be a defense to a charge of failing to register under section 290. However, forgetfulness is neither a loss of knowledge, nor a form of ignorance. Although forgetfulness may temporarily or momentarily negate the immediate awareness that one must undertake a given action at a given time, it does not alter or affect the underlying knowledge that such *815 action is required. If someone forgets something he or she already knows, a simple reminder is generally sufficient to restore the preexisting knowledge to awareness. Thus, one may know that one has an obligation, even if one has a temporary lapse in awareness thereof at the particular moment the obligation is due to be performed. In contrast, if one does not know something in the first instance, no amount of reminding will bring it to awareness until actual knowledge of the fact is imparted. Forgetting something is fundamentally different from not knowing that thing.
The dissent states that the term willfully as used in section 290, subdivision (g) "has meaning only if it is interpreted to require a conscious determination not to register, as distinguished from inadvertence or forgetfulness, in order to impose criminal liability." Once again, we respectfully disagree. A "conscious determination not to register" is an example of the kind of specific intent or mental state that is not required in a general intent crime like the one at issue. (People v. Johnson, supra, 67 Cal.App.4th at pp. 71-72, 78 Cal. Rptr.2d 795.) The element of willfulness simply requires that the defendant have actual knowledge of the registration requirement. It does not create any additional element of a specific intent not to register. Because section 290 is a general intent crime, conviction requires proof only that a defendant failed to register despite having knowledge of the registration obligation. (Johnson, at pp. 71-72.) The "willfulness" requirement does not protect a properly informed and knowledgeable defendant from criminal liability if the obligation inopportunely slips his mind.[10]
By following Cox in ruling that forgetfulness is not a defense to the charge in this case, we neither transform failure to register into a strict liability offense, nor do we eliminate general intent as an element of the crime. In a strict liability crime, ignorance of the law is no excuse, and one may be convicted even in the absence of any knowledge of the requirements of the statute. Failure to register would be a strict liability offense only if knowledge of the statutory obligation were not required. However, as seen, one may not be guilty of a violation of section 290 if one is ignorant of the law. (Garcia, supra, 25 Cal.4th at p. 754, 107 Cal.Rptr.2d 355, 23 P.3d 590.) Moreover, the only intent required for a general intent offense like the one at issue in this case "is the purpose or willingness to do the act or omission." (People v. Johnson, supra, 67 Cal.App.4th at p. 72, 78 Cal.Rptr.2d 795, italics added.) Thus, "[t]he willfulness element of Penal Code section 290 is satisfied by a purposeful *816 or willing omission." (Ibid., italics added.) Because forgetfulness neither negates knowledge nor constitutes ignorance, a defendant will be liable for failing to register once it is established that he had actual knowledge of the statutory obligation to do so, regardless of whether he temporarily forgot. He willfully  i.e., willingly  failed to assume a responsibility to abide by the law of which he cannot be said to have been ignorant. Here, it is clear that appellant had actual knowledge of the registration requirement. Yet he did not take that requirement seriously enough to do whatever it took to remember to abide by the law. He was willing to risk the omission, and must pay the penalty for that willful failure.
Contrary to the dissent, the crime of perjury is not analogous to the offense of failing to register in compliance with section 290. Unlike the crime at issue, perjury is a crime of commission rather than omission. Perjury requires the willful act of stating as unqualifiedly true some material matter which the defendant either knows to be false, or does not know to be true. (§§ 118, 125.) Thus, the element of willfulness in perjury requires proof the defendant made the statement with the consciousness that it was false, or else with the consciousness that he did not know it was true and with intent that it should be received as a statement of true fact. (People v. Hagen (1998) 19 Cal.4th 652, 663-664, 80 Cal.Rptr.2d 24, 967 P.2d 563 (Hagen); People v. Von Tiedeman (1898) 120 Cal. 128, 135, 52 P. 155; People v. Tolmachoff (1943) 58 Cal.App.2d 815, 821, 138 P.2d 61.) The willfulness element of perjury does not make forgetfulness a defense thereto. The key to perjury is the honesty of the witness's testimony concerning facts, not whether or not the witness has forgotten the facts. If one simply forgets one's former knowledge of the facts, one may still testify truthfully that one is unable to recall them, and avoid committing perjury. On the other hand, if a person has forgotten the facts and nonetheless goes ahead and testifies thereto not knowing whether his testimony is true or false, he has committed perjury. (§ 125.) Moreover, unlike the offense of failing to register, conviction of perjury does not require proof that the defendant had actual knowledge of the requirements of the perjury statute. There is simply no similarity between the two crimes, and the elements of perjury offer no support for the alleged defense of forgetfulness.
The dissent also analogizes to duties arising in the context of federal statutes dealing with taxation, immigration and military selective service. We believe that any analogy between these statutes and the registration requirement at issue is strained at best. In the principal California case cited by the dissent in support of the alleged analogy, our Supreme Court itself made clear the fact that "mistake or ignorance of the penal law is almost never a defense," and any exception to the usual common law rule that ignorance of law is no excuse has been limited to situations in which an individual's misunderstanding or ignorance of civil statutory provisions may be pertinent to some corollary penal sanction. (Hagen, supra, 19 Cal.4th at pp. 660-661, 80 Cal.Rptr.2d 24, fn. 4.)[11] At *817 least according to Hagen, then, the general rule that ignorance of the law is no excuse continues to apply in the context of criminal statutory duties.
The dissent urges that permitting a defendant to offer forgetfulness as a defense to the charge of willful failure to register, and instructing the jury to evaluate the credibility of such a claimed defense, would not impose an insuperable burden on the prosecution in section 290 cases. Although our disagreement is with the premise of the dissent's argument  the validity of the claimed forgetfulness defense  we also disagree with the assumption that such a defense might easily be tried in practice. Even with a carefully crafted instruction, allowing forgetfulness as a defense places the burden on the prosecution to prove a negative  that the defendant did not forget the knowledge as claimed. Assuming that it may be relatively easy to prove intent inferentially from circumstantial evidence, or to infer a defendant's knowledge from proof of actual notice, the same cannot be said of proving the fact that a defendant failed to forget something he already knew. Unlike the positive state represented by actual knowledge of a fact, forgetfulness, or the loss of awareness of a fact, is itself a negative condition. Inferring the absence of this negative state of forgetfulness from proof that a defendant was given actual notice of the registration requirement is far more difficult than inferring the presence of the positive state of knowledge. Yet each time the prosecution proves that a defendant was given such actual notice of the registration requirement, the defendant could claim that he simply "forgot it." The practical difficulties presented in trying to enforce the dictates of section 290 in the face of this "defense" seem to us all too obvious.
The people of this State, through their Legislature, have imposed in section 290 a yearly registration requirement on convicted sex offenders. The dissent urges that the consequences of inadvertently forgetting to comply with this requirement are too "draconian" for the courts to disallow a convicted sex offender from asserting his *818 alleged forgetfulness as a defense to the charged crime of failing to register. But there are some responsibilities which are so important they simply cannot be forgotten. The registration requirement established by section 290, subdivision (a)(1) is one of these responsibilities. It is fixed and ongoing, and does not expire or diminish over time. Nor are the consequences of failing to comply ameliorated or reduced by good behavior or life changes. Appellant owed it to himself as well as to society to remember to fulfill the statutory responsibility to register annually at the time of his birthday. He concededly had longstanding actual knowledge of this important responsibility. It was a responsibility the law does not permit him to forget, or as he initially stated, to ignore because he was "too busy."
In sum, we hold that simply forgetting is not a defense to a charge of violating section 290, and appellant's present claim that he lacked the necessary willfulness to commit the charged offense because he forgot the annual registration updating requirement is meritless. For that reason, the trial court did not err in instructing the jury that "forgetting to register by itself does not provide a defense to a charge of willful failure to register." The instruction was a correct statement of the law; forgetting the mandatory registration requirement of section 290 is simply not a legitimate defense to the charge of willfully failing to register. Section 290 imposes a duty upon all registrants, once they have received and understood advisement of the duty to register, to remember and fulfill that legal obligation. We do not believe the Legislature intended that a defendant could successfully evade this duty by claiming that "I totally forgot about it." "The willfulness element of section 290 requires actual knowledge of the registration requirement. We take that to mean that the defendant has become actually aware of the duty to register. Once a person is made aware of the registration responsibility, he or she may not defend on the basis that the requirement simply 'slipped' his or her mind." (Cox, supra, 94 Cal.App.4th at p. 1377, 115 Cal.Rptr.2d 123.)

ALLEGED UNFAIR PRECLUSION OF DEFENSE
Appellant next asserts that, independent of whether forgetfulness is a legitimate defense to the charge of willfully failing to register, he was denied due process of law by the trial court's jury instruction to that effect after appellant "had been allowed" to offer evidence that he had forgotten to update his registration because of "how busy he was at Project 90," and had then relied on that evidence in arguing to the jury that his failure to update was not willful because it was the product of his forgetfulness. In appellant's words, "[t]he error was not in the content of the instruction per se but it was the denial of a fair trial by allowing appellant to rely on a defense and then precluding the jury from considering it." Appellant offers no citations to any authority in support of this creative line of reasoning.
When the jury sent the trial court a message during deliberations asking whether forgetting to register was a willful act, the court was obliged to answer according to the law. It had no duty to instruct on a defense unsupported by substantial evidence (People v. Barton (1995) 12 Cal.4th 186, 201, 47 Cal.Rptr.2d 569, 906 P.2d 531), and certainly was not permitted to give an instruction that was either misleading or incorrect as a matter of law. (People v. Ashmus (1991) 54 Cal.3d 932, 994, 2 Cal.Rptr.2d 112, 820 P.2d 214; People v. Gordon (1990) 50 Cal.3d 1223, 1275, 270 Cal.Rptr. 451, 792 P.2d 251.) Contrary to appellant's unsupported assertion, the trial court was not required to bolster appellant's purported "I forgot" defense *819 by giving the jury a response in any way suggesting that, despite a defendant's actual preexisting knowledge of his legal obligation to register, a willful failure to do so might be excused by sheer forgetfulness. In responding to the jury's note with the instruction that "forgetting to register by itself does not provide a defense to a charge of willful failure to register," the trial court simultaneously gave a correct statement of the law, and avoided the pitfall of misleading the jury. (Cox, supra, 94 Cal.App.4th at pp. 1376-1377, 115 Cal.Rptr.2d 123.)
Appellant nevertheless insists that even if the instruction was technically correct, giving it at that stage of the trial "unfairly pulled the rug out from under" appellant and his counsel, undermining their credibility and appellant's basic defense at trial. Although a trial court may be precluded from barring or undermining a particular defense once it has expressly ruled that it was available (cf. People v. Quartermain (1997) 16 Cal.4th 600, 616-623, 66 Cal. Rptr.2d 609, 941 P.2d 788 [prosecution's use of defendant's pretrial statement to impeach his trial testimony, in breach of pretrial agreement with defendant not to use the statement in court, was fundamentally unfair and a violation of due process] ), there is no rule stating that a trial court's silence on a particular issue may induce a defendant's detrimental reliance thereon and prevent subsequent jury instructions on that issue unfavorable to the defense. Here, there was no pretrial agreement between the parties or ruling by the trial court permitting appellant to rely on the defense that forgetfulness may negate willfulness for purposes of section 290. The trial court simply allowed appellant to present evidence of his duties at Project 90, thereby permitting the jury to draw the inference that appellant was too busy to remember to register. The trial court's silence on the question whether forgetting was a defense apparently prompted the jury's inquiry on this point. The trial court's response to the jury's question was legally appropriate, and appellant was not denied due process thereby.
Moreover, the trial court's instruction did not preclude the jury from considering the evidence of appellant's forgetfulness in determining whether his failure to register was willful. The trial court specifically advised the jury that forgetting to register "by itself" did not constitute a defense to the charges. The clear implication of this instruction was that the evidence of appellant's busy schedule and resulting forgetfulness might, in combination with other evidence bearing on the issue of willfulness, be considered in determining whether appellant's failure to update his registration within the statutory time frame was "willful." Thus, the trial court's instruction did not actually exclude the jury's consideration of appellant's evidence or defense. It simply  and correctly  stated that forgetfulness alone cannot negate willfulness.

SUFFICIENCY OF EVIDENCE OF APPELLANT'S BIRTH DATE
Finally, appellant contends that he was denied due process because he was wrongly convicted without sufficient evidence of the corpus delicti of the offense  specifically, the actual date of his birth, within five days of which he was obliged to update his registration  by means of evidence independent of his own extrajudicial statements. Appellant's contention is meritless.
"Distilled to its essence, the corpus delicti rule requires that the prosecution establish the corpus delicti of a crime by evidence independent of the defendant's extrajudicial inculpatory statements before he or she may be held to answer a criminal complaint following a preliminary examination, be convicted of an offense, or hear the *820 statements repeated as evidence in court. [Citation.] The corpus delicti in turn consists of at least slight evidence that somebody committed a crime." (People v. Ochoa (1998) 19 Cal.4th 353, 450, 79 Cal. Rptr.2d 408, 966 P.2d 442.)
Appellant impliedly concedes that with his extrajudicial statements, the evidence was sufficient to prove his birthday. Indeed, the record contains several express admissions by appellant that his birthday was on March 5, as well as abundant police records evidencing that fact. Appellant never objected to the admission of any of this evidence on corpus delicti grounds. Of equal importance, he never asserted the insufficiency of the evidence of his birthday based on the corpus delicti rule.
"By failing to object, [appellant] cannot now complain the evidence was improperly admitted. [Citation.] It may well be that `proof of the corpus delicti was available and at hand during the trial, but that in the absence of [a] specific objection calling for such proof it was omitted.' [Citation.]" (People v. Wright (1990) 52 Cal.3d 367, 404, 276 Cal.Rptr. 731, 802 P.2d 221.) "A defendant cannot on review complain of insufficiency of evidence based on improper admission of corpus delicti evidence where defendant omitted to interpose a specific objection on the ground of the corpus delicti rule, especially when `[i]t may well be that "proof of the corpus delicti was [otherwise] available. . . ." [Citation.]' [Citation.]" (People v. Sally (1993) 12 Cal.App.4th 1621, 1628, 16 Cal. Rptr.2d 161; see also People v. Martinez (1994) 26 Cal.App.4th 1098, 1103-1104, 31 Cal.Rptr.2d 869 [same].) Because he failed to object at trial to the admission of the evidence of his birth date on the ground of violation of the corpus delicti rule, appellant may not now for the first time on appeal rely on that rule to attack the sufficiency of the evidence to support his conviction. (People v. Sally, supra, 12 Cal.App.4th at p. 1628, 16 Cal.Rptr.2d 161.)
Appellant's current contention is meritless for another reason. To establish the corpus delicti of an offense, only a "slight or prima facie showing" is required. (People v. Jennings (1991) 53 Cal.3d 334, 364, 279 Cal.Rptr. 780, 807 P.2d 1009; see also People v. Ochoa, supra, 19 Cal.4th at p. 450, 79 Cal.Rptr.2d 408, 966 P.2d 442; People v. Kraft (2000) 23 Cal.4th 978, 1057, 99 Cal.Rptr.2d 1, 5 P.3d 68; People v. Diaz (1992) 3 Cal.4th 495, 528-529, 11 Cal. Rptr.2d 353, 834 P.2d 1171.)[12] By this standard, the evidence of appellant's birth date was plainly sufficient. The records and files of the Department of Justice and the San Mateo Police Department going back to 1988 consistently refer to appellant's birth date as March 5, 1950. Contrary to appellant's assertion on this appeal, *821 there is nothing in the record to support the alleged inference that only he himself could have been the ultimate source of the birth date information contained in these public records. The Police Department files were public records, of which "[t]he sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1280, subd. (c); see People v. Monreal (1997) 52 Cal.App.4th 670, 678, 60 Cal.Rptr.2d 737.) Even if the ultimate source of this information in the public records was appellant himself, the fact remains that March 5, 1950, has been accepted as his actual birth date for as long as he has been obliged to register as a sex offender. Assuming hypothetically that appellant's own statements were the ultimate source of this information, certainly the fact it has been accepted as true for over twelve years by the public, the Department of Justice, and appellant himself is "slight or prima facie" evidence of the truth of that fact, and therefore sufficient for purposes of the corpus delicti rule.[13]
In sum, the corpus delicti having been established by competent evidence, we conclude there was sufficient evidence to support appellant's conviction of the charged offense of violating section 290.

DISPOSITION
The judgment is affirmed.
I concur: CORRIGAN, J.
POLLAK, J., Dissenting.
The majority concludes that if one forgets to do something, that person has willfully failed to perform the act that he or she has forgotten. This conclusion and the decision in People v. Cox (2002) 94 Cal. App.4th 1371, 115 Cal.Rptr.2d 123 (Cox), on which the majority relies, eliminate the critical element of willfulness from the statute involved in this case, disregard the legislative history as well as the language of that very statute, misconstrue controlling authority of the California Supreme Court and, with all respect, distort fundamental principles of our criminal law. If permitted to stand, I believe this decision will plant disturbing confusion into an important field of law, as well as work a grave injustice in this case.
For the reasons explained in People v. Edgar (2002) 104 Cal.App.4th 210, 218-219, 127 Cal.Rptr.2d 662 (Edgar), I disagree with the majority's conclusion that the initial instructions given to the jury on the subject of willfulness (CALJIC No. 1.20) and general intent (CALJIC No. 3.30) sufficiently advised the jury of the necessary elements of the charged offense, including actual knowledge. As in Edgar, "[t]he trial court in this case gave the same willfulness instruction found inadequate in Garcia [(2001) 25 Cal.4th 744, [107 Cal. Rptr.2d 355, 23 P.3d 590]] ([s]ee CALJIC No. 1.20)" and "like the `"ignorance of the law is no excuse"' instruction (CALJIC No. 4.36) given in Garcia, the general intent instruction given here (CALJIC No. 3.30) `on its face would allow the jury to convict [appellant] of failing to register even if he were unaware of his obligation to do so.' (People v. Garcia, supra, 25 *822 Cal.4th at p. 754, [107 Cal.Rptr.2d 355, 23 P.3d 590].)" (Edgar, supra, 104 Cal. App.4th at p. 219, 127 Cal.Rptr.2d 662.)
However, regardless of the sufficiency of these CALJIC instructions, here, in response to a specific inquiry in the midst of its deliberations, the jury was instructed that "forgetting to register by itself does not provide a defense to a charge of willful failure to register." This supplemental instruction was wrong, and prejudicially compounded the effect of the error in the initial instructions.
There are numerous reasons for which Cox was wrongly decided. Cox held that forgetting is not an available defense to the crime of failing to register under Penal Code section 290.[1] The Cox court reasoned that "Forgetting presupposes knowledge. Appellant, in our view, conceded that he had actual knowledge of the registration requirement. Human beings store in their brains a myriad of facts. At any given time the vast majority of those facts are in storage waiting for some cue to bring them to conscious recognition. A spouse may forget a wedding anniversary, a patient a medical appointment; such lapses arise not from a lack of actual knowledge but a failure to respond to cues. Persons keep calendars and appointment books, ask others to remind them of duties and obligations and tie strings around their fingers all to insure that important responsibilities are met. We conclude that within this context one willfully fails to register when possessed of actual knowledge of the requirement he or she forgets to do so." (Cox, supra, 94 Cal.App.4th at p. 1376, 115 Cal.Rptr.2d 123.) The court then concluded that this interpretation of the statute is consistent with the public policy embodied in the registration statute, emphasizing the "great importance that those who have committed qualifying sex offenses be readily available for police surveillance." (Id. at p. 1377, 115 Cal.Rptr.2d 123.)
This conclusion reads the critical term "willfully" out of the statute. If correct, Cox means that once an individual learns of the requirement to register, he (or, rarely, she) as a matter of law will forever be deemed to retain that knowledge in his consciousness, and will be held strictly liable for the failure to re-register when required to do so, regardless of whether the failure results from a conscious decision not to register or from mere inadvertence. The majority here repeatedly endorses this view that, as a matter of law, knowledge is permanent, so that once one has been told of the need to register, any failure to do so when required is necessarily willful as long as the individual is not physically restrained from complying. (Maj. opn. ante, pp. 812-814.)
Simply as a matter of common understanding, there is no doubt that "merely forgetting to do an act does not equate with intentionally and willfully refusing to do it." (Grumet v. State (Fla.Ct.App.2000) 771 So.2d 39, 44 (cone. opn. of Farmer J.) [revocation of probation for failure to register as sex offender as required by Florida statute remanded for clarification of whether trial court determined that defendant did not forget requirement].)[2] Indeed, *823 the word "forget" is defined as "[t]o omit or neglect through inadvertence; . . . to cease or omit to think of, let slip out of the mind, leave out of sight, take no note of (Oxford English Dictionary (2d ed.1989)). I shall explore more fully the meaning of "willfully" in the discussion below, but whatever else the term may mean, it is the opposite of inadvertently. One who forgets to do something  such as celebrate a wedding anniversary, or keep a medical appointment, using the examples in Cox  does not willfully insult their spouse or willfully stand up their doctor. Whatever the consequences of such an inadvertent omission may be, if one has forgotten, the omission is not willful.
Appellant was charged with violating section 290, subdivision (g)(2), which punishes any person required to register under section 290, subdivision (a)(1) based on a felony conviction "who willfully violates any requirement" of the section. The inclusion of the qualifier "willfully" was not inadvertent. In tracing the history of section 290, one finds that the Legislature repeatedly amended the penal provisions of the statute, generally to include willfulness as an element of the offense when increasing the punishment. Prior to 1979, former section 290 provided simply that "[a]ny person required to register under the provision of this section who shall violate any of the provisions thereof is guilty of a misdemeanor." (Stats.1947, ch. 1124, § 1, p. 2562.) Simple failure to register constituted the misdemeanor; there was no element of willfulness. In 1979, while retaining the first sentence, the Legislature inserted two additional sentences in subdivision (f), mandating a minimum 90-day period of confinement for persons who had committed designated sex crimes and "willfully" failed to register as required by the statute. (Stats. 1979, ch. 944, § 8, p. 3256.)[3] Over the years, the penal provisions for failure to register, now in subdivision (g), were expanded to their present form. (See, e.g., Stats.1989, chs. 1316, 1402, 1407; Stats.1994, ch. 865, § 1.7, pp. 4351-4352; Stats.1994, ch. 867, § 2.7, p. 4393; Stats.1999, ch. 901, § 1.5, pp. 77-78.) Under the current subdivision (g)(1), one required to register because of a prior misdemeanor conviction or juvenile adjudication who "willfully violates any requirement of this section" is guilty of a misdemeanor. Similarly, except as provided in subdivisions (g)(5) and (g)(7), one required to register based on a felony conviction or juvenile adjudication who "willfully violates any requirement of this section," is guilty of a felony.[4] The exceptions provided in (g)(5) and (g)(7) are telling. Under subdivision *824 (g)(7), one "who fails to provide proof of residence," as required, is guilty of a misdemeanor punishable by imprisonment for no more than six months, and under subdivision (g)(5) a person adjudicated a sexually violent predator under section 6600 of the Welfare and Institutions Code "and who fails to verify his or her registration every 90 days as required" shall be punished by imprisonment for not more than one year.[5] Thus, individuals subject to registration who fail to provide the information referred to in subdivisions (g)(5) and (g)(7) are criminally liable for the omission whether or not their failure was willful, but these omissions are not punishable as felonies. Similarly, under subdivision (h), if a person released on parole or probation is required to register "but fails to do so within the time prescribed," the parole authority or the court "shall order the parole or probation of the person revoked." No element of willfulness is required.
Attempts have been made to further amend section 290 to delete willfulness as an element of the offense of failing to register. (See Assem. Bill Nos. 3513 and 1211 (1993-1994 Reg. Sess.) §§ 865, 864.) To date, however, all such efforts have been unsuccessful. In 1994, Assembly Bill No. 3513 was introduced, which sought to "delete the element of willfulness from the statute requiring sex offenders to register," as well as to increase the penalty for failure to register from a misdemeanor to a felony. (Assem. Bill No. 3513 (1993-1994 Reg. Sess.) § 865; Assem. Com. on Public Safety, Analysis of Assem. Bill No. 3513 (1993-1994 Reg. Sess.) Apr. 5, 1994, p. 2.) "The purpose of the bill [was] to increase the penalties under the sex offender registration statute and to broaden its scope and application." (Cal. Sexual Assault Investigators Association, Analysis of Assem. Bill No. 3513 (1993-1994 Reg. Sess.) Aug. 26, 1994, p. 3.) The analysis of the bill given by the Assembly Committee on Public Safety offered in support of the amendment that "Section 290 of the Penal Code is not effective in identifying the whereabouts of previously convicted sex offenders. To make the registration program successful, the sponsor, DOJ [Department of Justice], believes the failure to register should be elevated to a felony. In this time of limited resources, district attorneys generally do not have the resources to prosecute misdemeanors. Since failure to register is a misdemeanor, district attorneys generally do not file complaints for failure to register. As a result, sex offenders learn if they fail to re-register upon moving, law enforcement will not follow-up. It is estimated that much of the address information maintained by the DOJ registration program is out-of-date or incorrect." (Assem. Com. on Public Safety, supra, p. 4.) However, the bill was amended in the Senate and, as finally adopted, increased the penalties for a violation but retained the element of willfulness in section 290. (Sen. Amend, to Assem. Bill No. 3513 (1993-1994 Reg. Sess.) Aug. 9, 1994; Stats.1994, ch. 865, § 1, p. 4321; Stats.1994, ch. 867, § 2.7, p. 4393.)
Thus, the current statute reflects a considered legislative determination that the failure to comply with the registration requirements constitutes a basis to revoke parole or probation whether or not the failure was willful, but that only certain *825 failures to comply with these requirements are subject to an additional criminal punishment in the absence of willfulness. Most failures to comply, including the more serious failures to register that constitute a felony, are not subject to the additional penalties that the statute imposes unless the failure was willful.
Accordingly, in Garcia, supra, the Supreme Court rejected the Attorney General's argument that a violation of the statute is established by proof that a defendant who failed to register received actual notice of his registration obligations and that "actual knowledge is not an element of the offense." (25 Cal.4th at p. 751, 107 Cal.Rptr.2d 355, 23 P.3d 590.) The Supreme Court explained: "a sex offender is guilty of a felony only if he 'willfully violates' the registration or notification provisions of section 290. [Citations.] The word `willfully' implies a `purpose or willingness' to make the omission. (§ 7.) Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed. As stated in People v. Honig (1996) 48 Cal. App.4th 289, 334, 55 Cal.Rptr.2d 555 `the term "willfully" . . . imports a requirement that "the person knows what he is doing." [Citation.] Consistent with that requirement, and in appropriate cases, knowledge has been held to be a concomitant of willfulness. [Fn. omitted.]' Accordingly, a violation of section 290 requires actual knowledge of the duty to register. A jury may infer knowledge from notice, but notice alone does not necessarily satisfy the willfulness requirement." (Garcia, supra, 25 Cal.4th at p. 752, 107 Cal.Rptr.2d 355, 23 P.3d 590.)
The conclusion reached in Cox and reaffirmed here  in effect, that a defendant is deemed to know whatever he once knew  is inconsistent with both the language and the reasoning of Garcia. In Garcia the Supreme Court concluded that "the court's instructions on `willfulness' should have required proof that, in addition to being formally notified by the appropriate officers as required by section 290, in order to willfully violate section 290 the defendant must actually know of his duty to register." (25 Cal.4th at p. 754, 107 Cal. Rptr.2d 355, 23 P.3d 590, italics added.) The court said "know," not "knew" or "have known." Implicit in the court's analysis is that the defendant must have the necessary knowledge at the time he was required but failed to register  not at some time in the past. The court referred to and relied upon the definition of "willfully" that appears in section 7, subdivision 1, that "when applied to the intent with which an act is done or omitted, [the term] implies simply a purpose or willingness to commit the act, or make the omission referred to."[6] One does not have a purpose or willingness not to register when one has forgotten that he must register. Indeed, *826 the court noted the fundamental requirement for a criminal conviction that, unless excluded expressly or by necessary implication, there must be mens rea, "a union of act and wrongful intent." (Garcia, supra, at p. 754, 107 Cal.Rptr.2d 355, 23 P.3d 590; § 20.) Such a union requires that the act and state of mind concur. (People v. Green (1980) 27 Cal.3d 1, 53-54, 164 Cal. Rptr. 1, 609 P.2d 468, overruled on different ground in People v. Martinez (1999) 20 Cal.4th 225, 237, 239, 83 Cal.Rptr.2d 533, 973 P.2d 512.)
It may be, as the Cox opinion states, that a registration requirement about which one has been told is "in storage" and could be brought to "conscious recognition" by some cue or reminder. But while the failure to keep a calendar or appointment book or tie a string around one's finger may fail "to [e]nsure that important responsibilities are met" (94 Cal.App.4th at p. 1376, 115 Cal.Rptr.2d 123), the failure to take such precautions does not convert the resulting omission into a willful act. Willfulness might be established if it were shown that the defendant consciously decided not to take measures that would remind him to register because he did not wish to bother registering.[7] But if the defendant made no such conscious determination, and simply overlooked the fact that the five-day window for re-registering had arrived, there is no sense in which his failure to re-register can be characterized as willful. A defendant's failure to have taken adequate measures to ensure that he did not overlook the need to re-register might well be negligent, but this characterization merely "import[s] a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns." (§ 7, subd. 2.) The "requirement of a willful (purposeful, willing or intentional) omission is more onerous than a negligent or reckless omission." (People v. Johnson (1998) 67 Cal.App.4th 67, 72, fn. 3, 78 Cal.Rptr.2d 795.)
Applying this basic distinction requires no elaborate differentiation between types of forgetfulness such as the majority constructs to justify its conclusion. (Maj. opn. ante, pp. 812, 813, 814.) Nor does acknowledging *827 this distinction convert section 290 into a specific intent crime, as the majority also suggests. To the contrary, the conclusion reached by the majority eliminates even general intent as an element of the crime. Since the offense created by subdivision (g)(2) is the willful failure to register as required by subdivision (a)(1), all that is required for a violation of subdivision (g)(2) is that the individual consciously determine not to register as required by subdivision (a)(1). In the words of section 7, there must be a purpose or willingness not to do what is required by subdivision (a)(1). It is not necessary that the defendant intend to violate subdivision (g)(2), and ignorance of the fact that failure to register as required by subdivision (a)(1) is an offense under subdivision (g)(2) is no defense. That, however, does not eliminate the requirement that the defendant at least have intended not to perform the act required by subdivision (a)(1)  i.e., that the individual have intended not to register when required to do so.[8]
California's perjury statute provides a helpful analogy. Under section 118, one commits perjury only if, after having taken an oath, one "willfully and contrary to the oath, states as true any material matter which he or she knows to be false." (Italics added.) Past knowledge that one has forgotten is not sufficient. "The essential as to knowledge of falsity pertains to the condition of mind of the witness at the time he gives the alleged false statement." (People v. Wong Fook Sam (1905) 146 Cal. 114, 116, 79 P. 848, italics added.) And before one may be convicted of perjury, "it must be shown that he made such statement 'willfully'  that is, with the consciousness that he did not know that it was true, and with the intent that it should be received as a statement of what was true in fact. . . . [T]he `willful' element in his testimony is quite as essential to the crime in the case of an unqualified statement of that which one does not know to be true, as in the case of a statement of that which one knows to be false. . . . [¶] `. . . [I]t is not perjury to swear honestly to testimony which the witness believes to be true, though a little diligence would have enabled him to have discovered its falsity.'" (People v. Von Tiedeman (1898) 120 Cal. 128, 135, 136, 52 P. 155; see also, e.g., People v. Tolmachoff (1943) 58 Cal.App.2d 815, 821, 138 P.2d 61 ["willfully" as used in perjury statute requires that the statement be made "with the consciousness that it was false; with the consciousness that he did not know that it was true"].)[9]
*828 I do not quarrel with the view expressed in Cox that the Legislature has ascribed great importance to the need for compliance with the registration requirements for those who have committed qualifying sex offenses. Nor do I question that the Legislature constitutionally could impose strict criminal liability on those who fail to register as required, so long as they have been given due notice of the need to register. (Cf. Lambert v. California (1957) 355 U.S. 225, 227, 78 S.Ct. 240, 2 L.Ed.2d 228; Garcia, supra, 25 Cal.4th at p. 753, 107 Cal.Rptr.2d 355, 23 P.3d 590.) In that event, a person required to register would act at his peril if he failed to take adequate measures to ensure that he remembered when it was time to re-register. Such a statute would indeed impose on the individual a "duty not to forget to perform" which the majority reads into the present statute. (Maj. opn. ante, p. 813.) Some states in fact have adopted sex-offender registration statutes that impose strict liability for failure to register by omitting the requirement that the failure be willful.[10] (State v. Beasley (Sept. 27, 2001) Ohio App., 2001 WL 1152871; People v. Patterson (2000) 185 Misc.2d 519, 708 N.Y.S.2d 815; cf. Grumet v. State, supra, 771 So.2d 39.) Under such a strict liability statute "a careless Sex Offender might simply forget about his registration obligation after a number of years have passed" but will have nonetheless "committed acts that fall within the statutory definition of the Crime of Failure-to-Register. . . ." (People v. Patterson, supra, at pp. 822-823.) New Hampshire, on the other hand, has made a sexual offender "who negligently fails to comply" with its registration requirements guilty of only a violation, while one who "knowingly" fails to comply is guilty of a misdemeanor for the first failure and of a felony for subsequent failures. (LXII N.H.Rev.Stat. Ann. § 651-B:9.) However, as pointed out above, and contrary to what the majority reads into section 290, California  like many other states[11]  has not adopted either approach, and the Legislature has rejected proposed amendments to the statute that would have eliminated the *829 willfulness requirement. As another division of this court observed in holding that one does not "willfully" discharge a firearm under section 246.3 if the person does not believe the gun is loaded, "we must give effect to the statute as written, not as it might have or should have been written." (In re Jerry R. (1994) 29 Cal. App.4th 1432, 1439, 35 Cal.Rptr.2d 155.)
Garcia emphasized, in determining the significance to be attached to the element of willfulness, that section 290 does not penalize affirmative conduct, but simply the "mere failure to act." (25 Cal.4th at p. 752, 107 Cal.Rptr.2d 355, 23 P.3d 590, italics in original.) A review of other statutes that penalize omissions underscores the difference between criminalizing a failure to do what the law requires, where forgetfulness is no excuse, and making the willful failure to take such action a crime, where the consequences are more severe but there is a correspondingly heavier burden to prove that the offender made a conscious decision not to comply.
Revenue and Taxation Code section 19701 makes it a strict liability offense, punishable as a misdemeanor, for a person to fail to file a tax return even if that person has no intent to evade the law.[12] (People v. Allen (1993) 20 Cal.App.4th 846, 850, 25 Cal.Rptr.2d 26.) In contrast, Revenue and Taxation Code section 19706 punishes as a felony those who willfully fail to file tax returns.[13] California law is based upon the federal model, which "provides a graduated scheme of civil penalties and misdemeanor and felony punishment to deter both honest mistakes and willful fraud." (People v. Hagen (1998) 19 Cal.4th 652, 662, 80 Cal.Rptr.2d 24, 967 P.2d 563.)[14]
Under federal law, 26 United States Code section 7203 punishes any person who willfully fails to a file a tax return, whereas 26 United States Code section 6651, subdivision (a) imposes a penalty upon a person who fails to file a specified return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." While a person who inadvertently forgets to file a federal tax return is not guilty of willfully failing to file a return under section 7203 (United States v. Rifen (8th Cir.1978) 577 F.2d 1111, 1113; United States v. Olson (8th Cir.1978) 576 F.2d 1267, 1272 fn. 4; United States v. Bengimina, supra, 499 F.2d at p. 119; see State v. Sinner (Mo.App.1989) 779 S.W.2d 690, 693), inadvertence, oversight, or forgetfulness *830 do not constitute reasonable cause under section 6651. (Weiss v. C.I.R. (1986) T.C. Memo 1986-469; Johnson v. C.I.R. (1966) T.C. Memo 1966-164; see also Murrill v. State Board of Accountancy (1950) 97 Cal.App.2d 709, 712-714, 218 P.2d 569 [plea of `'willful" failure to supply information for federal income tax computation shows omission was not negligent, inadvertent or an honest mistake, but dishonest, deceitful or fraudulent].)
Section 1302 of the Immigration and Naturalization Act (8 U.S.C. § 1302) requires aliens residing in the United States to register and be fingerprinted.[15] Section 1306, subdivision (a) of the Act provides that "any alien required to apply for registration and to be fingerprinted in the United States who willfully fails or refuses to make such application or to be fingerprinted . . . shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not to exceed $1,000 or be imprisoned not more than six months, or both." (Italics added.) Section 1306, subdivision (b) of the Act, in contrast, provides in relevant part that "[a]ny alien or any parent or legal guardian in the United States of any alien who fails to give written notice to the Attorney General, as required by section 1305 [16] of this title, shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not to exceed $200 or be imprisoned not more than thirty days, or both." (Italics added.) The latter provision, imposing a lower fine and lesser jail time for its violation, is a strict liability offense under which the prosecutor is not required to prove a defendant's willfulness. (Legalization Assistance Project v. I.N.S. (9th Cir.1992) 976 F.2d 1198, 1208, fn. 16, vacated on other grounds in 510 U.S. 1007, 114 S.Ct. 594, 126 L.Ed.2d 560.)
Section 453 of the Military Selective Service Act (50 App. U.S.C.A. § 453) requires "every male citizen of the United States, and every other male person residing in the United States, who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration. . . ." Under section 462 of the Act, "any . . . person charged as herein provided with the duty of carrying out any of the provisions of this title . . . who shall knowingly fail or neglect to perform such duty . . . shall, upon conviction . . . be punished by imprisonment for not more than five years or a fine of not more than $10,000." (Italics added.) Because the statute requires that a defendant knowingly fail or neglect to report, an inadvertent failure to report is not a violation. (United States v. Johnson (2d Cir. 1971) 443 F.2d 189, 192 [affirming conviction on other grounds but implying that oversleeping might be considered inadvertent].)
These exemplary statutes, and others that might be cited,[17] emphasize the wide-spread *831 legislative and judicial recognition of the significant difference between a statute criminally punishing the mere failure to perform a legally required act, as to which forgetting provides no defense, and the willful failure to do so, for which the penalty typically is greater but which Jis not made out unless the failure reflects a conscious decision not to comply.
During oral argument in this case, it was suggested that the holding in Cox does not deprive the statutory requirement of willfulness of all meaning because it excludes from liability one who is unconscious or physically prevented from registering, for instance because the person is hospitalized or otherwise physically restrained from traveling to the registration site. The majority adopts this suggestion. (Maj. opn. ante, p. 813.) But even under statutes that impose strict criminal liability, physical impossibility provides a defense. Section 26 identifies classes of persons incapable of committing crimes, including, "[p]ersons who committed the act charged without being conscious thereof and "[p]ersons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." Unconsciousness is a complete defense to a criminal charge. (People v. Wilson (1967) 66 Cal.2d 749, 761, 59 Cal. Rptr. 156, 427 P.2d 820; People v. Newton (1970) 8 Cal.App.3d 359, 376-378, 87 Cal.Rptr. 394.) "Some mental state, if only consciousness, is required for every crime, even one termed a `strict liability' offense." (People v. Atkins (2001) 25 Cal.4th 76, 93, 104 Cal.Rptr.2d 738, 18 P.3d 660 (cone. opn. of Mosk, J.).) There is no criminal liability "as to failure to be present at a required time and place (e.g., a juror, witness, or soldier on leave) because of a flood or a broken bridge, or any other physical force that makes locomotion impossible." (Hall, General Principles of Criminal Law (2d ed.1947) p. 423.) Thus, to the extent that a defendant's failure to register is caused by some circumstance beyond his control, he would not be subject to criminal liability under section 290 even if the requirement of willfulness were deleted from the statute. Hence, the term "willfully" as it appears in section 290 subdivision (g) has meaning only if it is interpreted to require a conscious determination not to register, as distinguished from inadvertence or forgetfulness, in order to impose criminal liability. And of course it is a basic precept of statutory construction that every term be given meaning if reasonably possible to do so. (In re Jerry R., supra, 29 Cal. App.4th at p. 1437, 35 Cal.Rptr.2d 155 ["Whenever possible, we must give effect to every word in a statute and avoid a construction making a statutory term surplusage or meaningless. [Citations.] We cannot create an offense by . . . deleting words, or by giving terms false or unusual meanings."].)
Contrary to a further argument advanced to support the conclusion in Cox, recognizing that a failure to register because one forgot is not willful does not place an insurmountable evidentiary burden on the prosecution, or threaten to undermine enforcement of the registration statute.[18] "[F]rom the very beginning of the public welfare offenses to the present *832 time, there has been an unvarying insistence on the difficulty of proving mens rea; e.g. `to permit such a defense would be to allow every violator to avoid liability merely by pleading lack of knowledge and thus, practically, nullify the statute. . . .' [Fn. omitted.] This argument implies that even though mens rea exists, it is impossible to prove it, presumably because there are distinctive features in such cases that make this proof peculiarly difficult. But if we appraise the actual situation in this respect, without prejudging it, it is impossible to attach any great weight to that argument. It amounts to no more than a bare assertion or a mere guess. It is obviously at odds with what is actually done in countless prosecutions. Moreover, a glance at the law on various major crimes reveals many situations where serious difficulties must be overcome in proving mens rea, e.g. receiving stolen goods, numerous instances where ignorance of fact is a defense, and innumerable statutory provisions where knowledge must be shown. [Fn. omitted.] The burden of proof would obviously be lightened, indeed practically eliminated, if there were no need to prove mens rea. But even primitive law did not often attach punitive sanctions to harms totally unrelated even to negligence. . . . It has never occurred to anyone to assert that the mere denial by the defendant that he had knowledge, e.g. that the goods he purchased were stolen, foreclosed the opportunity of proof to the contrary. The fact that minor offenses are involved does not alter the prospects or methods of establishing mens rea. Instead, the judges of the facts may be expected to be less hesitant to find such offenders guilty. Nor should it be forgotten that proof of recklessness is sufficient to sustain penal liability; that not only lessens the burden of prosecution, it also conforms to established principles." (Hall, General Principles of Criminal Law, supra, pp. 348-350.)
It is well established that intent may be proven circumstantially. (1 Witkin, Cal. Evidence (3d ed. 1986) Circumstantial Evidence, § 408, pp. 381-382.) In Garcia itself, the Supreme Court recognized that "[although notice alone does not satisfy the willfulness requirement, a jury may infer from proof of notice that the defendant did have actual knowledge, which would satisfy the requirement." (25 Cal.4th at p. 752, 107 Cal.Rptr.2d 355, 23 P.3d 590, italics in original.) The court acknowledged that in some cases potential difficulties of proof have justified interpreting statutes to include criminal negligence, i.e., conviction based on what the defendant reasonably should have known, but it pointed out that these cases generally involve affirmative acts, and should not be applied to the registration statute which involves only the failure to act. (Ibid.) While it may be an easy matter for a defendant to say that he forgot, it is another matter to convince a jury that this is true. Grumet v. State, supra, 771 So.2d at page 43 illustrates that the trier of fact may well reject a defendant's "testimony that `he forgot all about it.'" The same has proven true in perjury prosecutions. (E.g., People v. Tolmachoff, supra, 58 Cal. App.2d 815, 821, 138 P.2d 61 [evidence sufficient to support jury's finding of willfulness, rejecting defendant's testimony that her prior statements reflected "her best recollection, honestly given, as to what occurred nearly a year prior to the time she testified"]; People v. Todd (1935) 9 Cal.App.2d 237, 244, 49 P.2d 611 ["The question of whether the false swearing is the result of an honest mistake or has been committed willfully, knowingly and corruptly is one of fact for the jury to decide [citation], and evidently the jury in the present case, as shown by its verdict, *833 did not believe the story told by appellant."].) Similarly, in the present case, the evidence of the explicit notifications given to defendant, his written acknowledgements of receiving and understanding these notices, his prior compliance with the registration requirements, and the importance of compliance which he presumably understood, would amply support a finding that defendant's failure to register was willful.
Nonetheless, the instructions given in this case improperly removed from the jury the opportunity to evaluate the credibility of defendant's claim that he did forget that it was time to re-register on the occasion in question. And unlike the situation in Garcia, supra, 25 Cal.4th 744, 107 Cal.Rptr.2d 355, 23 P.3d 590, there is no basis to suggest that the error was harmless. In Garcia, the defendant did not testify that he had forgotten to register. Rather, the only evidence he introduced to show lack of knowledge was his testimony that nobody had explained the registration requirement to him, and under the instructions which the trial court gave, the jury was required to find that defendant had been informed of the duty to register in order to convict. Since the only factual question presented by the evidence had been properly put to the jury, the court concluded that proper instructions on the knowledge requirement would have made no difference in that case. (Id. at p. 755, 107 Cal.Rptr.2d 355, 23 P.3d 590.) Here, in contrast, the defendant acknowledged that he was properly notified of the registration requirement but testified that, under the particular circumstances, which he described, he had forgotten that it was time to re-register. The inquiry submitted by the jury in the middle of deliberations, asking "Is forgetting to register [sic] a 'willful' [sic] act according to the law," shows unmistakably that some or all members of the jury believed, after hearing defendant's testimony, that its credibility was entitled at a minimum to serious consideration.[19] Under these circumstances, it is impossible to conclude that it is not reasonably probable that a result more favorable to the defendant would have been reached if the correct instructions had been given. But in all events, since the instructions as augmented by the trial judge's response to the jury's explicit question effectively denied defendant his constitutional right to have his factual defense determined by the jury, the standard is whether the error was harmless beyond a reasonable doubt  the standard applied in Garcia. (Id. at p. 755, 107 Cal.Rptr.2d 355, 23 P.3d 590; see also People v. Flood (1998) 18 Cal.4th 470, 479-482, 76 Cal. Rptr.2d 180, 957 P.2d 869.) In view of the specific inquiry from the jury, there can be no question that the error here was not harmless beyond a reasonable doubt.
More than 20 years ago, Barker was convicted of a serious sex crime. He was duly sentenced to a lengthy term of imprisonment, which he served. Upon his release from prison, he registered as required by section 290 and for five years he timely re-registered annually in accordance with the statute. During this period, he made progress in pulling his life together, finding employment and committing no further offenses. When he missed the window for his annual re-registration by less than three days  assertedly because *834 he overlooked the filing period in the press of extraordinary job demands  he hurried to the police station to re-register within an hour of being reminded of the need to do so. For this, he has been removed from society for an additional nine years.
If Barker consciously chose to disregard the deadline for his annual re-registration, he has no one but himself to blame for incurring the severe consequences that the statute imposes for a willful failure to comply. However, if his oversight was inadvertent, the law does not impose such draconian consequences. However dubious this court may be that he truly forgot, as he testified, members of the jury who heard his testimony apparently were not so skeptical. Our Constitution guarantees a defendant the right to have the jury weigh the credibility of his testimony against the weight of the evidence offered by the prosecution to show that his failure to timely register was purposeful. Barker was denied that right and is entitled to a new trial.
For these reasons, I would reverse the conviction and remand for a new trial under proper instructions.
NOTES
[1] Unless otherwise indicated, all further statutory references are to the Penal Code.
[2] "In a case like this, involving a failure to act, we believe section 290 requires the defendant to actually know of the duty to act. . . . [A] sex offender is guilty of a felony only if he 'willfully violates' the registration or notification provisions of section 290. [Citations.] The word `willfully' implies a `purpose or willingness' to make the omission. [Citation.] Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed. . . . `[T]he term "willfully" . . . imports a requirement that "the person knows what he is doing." [Citation.] Consistent with that requirement, and in appropriate cases, knowledge has been held to be a concomitant of willfulness Accordingly, a violation of section 290 requires actual knowledge of the duty to register. A jury may infer knowledge from notice, but notice alone does not necessarily satisfy the willfulness requirement." (Garcia, supra, 25 Cal.4th at p. 752, 107 Cal.Rptr.2d 355, 23 P.3d 590.)

"Accordingly, we conclude the [trial] court's instructions on `willfulness' should have required proof that, in addition to being formally notified by the appropriate officers as required by section 290, in order to willfully violate section 290 the defendant must actually know of his duty to register. We also conclude that the court erred in giving an 'ignorance of the law is no excuse' instruction (CALJIC No. 4.36), which on its face would allow the jury to convict defendant of failing to register even if he were unaware of his obligation to do so. . . . [Although the `no excuse' principle is `deep in our law, . . . due process places some limits on its exercise.' [Citations.] In the registration act context, the jury must find actual knowledge of the act's legal requirements." (Id. at p. 754, 107 Cal.Rptr.2d 355, 23 P.3d 590.)
[3] We note that Edgar is distinguishable from this case on its facts. In Edgar, there was substantial evidence that although the defendant had acquired one or more additional addresses during the relevant time period, he had never abandoned the original residential address at which he had previously registered. Because during the time applicable to Edgar neither section 290 itself nor the registration documents given to the defendant addressed the issue of multiple residences, Division Two concluded he did not have clear notice of what he had to do to comply with his registration responsibilities under the statute, and the trial court's jury instructions effectively imposed criminal liability for failing to register "without any need for the jury to find that [the defendant] actually knew the law required him to register multiple residences." (Edgar, supra, 104 Cal.App.4th at p. 220, 127 Cal.Rptr.2d 662.) Moreover, even though there was evidence at trial that the defendant had actual knowledge of his general duty to register a change of address with the appropriate law enforcement agency, there was no evidence showing he also knew that his acquisition of a temporary second residential address (at a transient hotel or homeless shelter) constituted a "change in residence" for purposes of section 290, requiring registration of the new address. On this basis, Division Two "concluded that the trial court's instructions together with the evidence adduced at trial make it highly unlikely that a properly instructed jury would have found that [the defendant] actually knew of the requirement to register his additional addresses." (Id. at pp. 221-222, 127 Cal. Rptr.2d 662, fn. 13.)

The circumstances before us are clearly different. Here, there were no multiple simultaneous residential addresses, with the corresponding issue of whether the section 290 registration requirement applies to them. Unlike the defendant in Edgar, appellant admitted having received advisement of the registration requirement applicable to his actual residential situation. There was no evidence presented at all to show that appellant did not receive and understand his obligation to re-register. The central issue in this case was whether appellant's registration requirement was excused because it happened to slip his mind. Edgar did not address this issue, and its holding is not authority for appellant's contention that forgetfulness is a valid defense to a section 290 charge.
[4] In pertinent part, section 7 provides as follows: "The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context: [¶] 1. The word `willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (Italics added.)

We do not read the statutory definition as being inconsistent with the Supreme Court's holding that it was error to instruct the jury that ignorance of the law is no excuse. The statement in section 7 that willfulness "does not require any intent to violate law" simply makes clear the fact that the crime at issue is a general intent crime, and that no specific intent or mental state is required. (People v. Johnson (1998) 67 Cal.App.4th 67, 71-72, 78 Cal.Rptr.2d 795.) This language in section 7 does not in any way imply that ignorance of that law may be an excuse; nor does it contradict the Supreme Court's holding that "[i]n the registration act context, the jury must find actual knowledge of the act's legal requirements." (Garcia, supra, 25 Cal.4th at p. 754, 107 Cal.Rptr.2d 355, 23 P.3d 590.) One may have actual knowledge of the statutory registration requirement and yet willfully fail to comply without any specific intent to violate the law. All that is required for violation of section 290 is a willing failure to register, without any other specific intent or mental state. (People v. Johnson, supra, 67 Cal. App.4th at p. 72, 78 Cal.Rptr.2d 795.)
[5] To this extent, we respectfully disagree with that portion of the opinion of our colleagues in Division Two of this court stating that the trial court's instructions to the jury in that case  which included both CALJIC No. 1.20 and CALJIC No. 3.30  "did not tell the jury about the necessity that [the defendant] purposefully violate the registration statute." (Edgar, supra, 104 Cal.App.4th at p. 220, 127 Cal.Rptr.2d 662.)
[6] At oral argument, counsel for appellant acknowledged that the offense at issue in this case is a general intent crime.
[7] Appellant also suggests a third or intermediate kind of forgetfulness, of the kind where a person is aware he or she cannot remember some needed information, and merely needs a means of refreshing or "prompting" his or her recollection to bring it immediately to mind. There is no evidence of this kind of forgetfulness in this case.
[8] "We conclude there is a fundamental difference between Garcia's claim [in People v. Garcia, supra, 25 Cal.4th 744, [107 Cal. Rptr.2d 355, 23 P.3d 590]] that he did not know he was required to register and appellant's claim that he forgot to register. Forgetting presupposes knowledge. Appellant, in our view, conceded that he had actual knowledge of the registration requirement. Human beings store in their brains a myriad of facts. At any given time the vast majority of those facts are in storage waiting for some cue to bring them to conscious recognition. A spouse may forget a wedding anniversary, a patient a medical appointment; such lapses arise not from a lack of actual knowledge but a failure to respond to cues. Persons keep calendars and appointment books, ask others to remind them of duties and obligations and tie strings around their fingers all to insure that important responsibilities are met. We conclude that within this context one willfully fails to register when possessed of actual knowledge of the requirement he or she forgets to do so.

"We think it is inconceivable the Legislature could have intended otherwise. Because the Legislature believed it is essential the authorities know at all times the whereabouts of those who have been convicted of committing sex offenses, it has created a demanding and rigorous registration scheme. [Citation.] [¶] . . . [¶]
"The Legislature obviously believes it is of great importance that those who have committed qualifying sex offenses be readily available for police surveillance. [Citation.] To this end the Legislature has created a registration scheme that places strict demands not only on registrants but also on state and local agencies. The legislation also contains strict requirements for notification to registrants of their obligations under section 290. In the face of such rigorous notification and registration requirements, it is unreasonable to believe that in this context the Legislature intended that a mere lapse of memory would excuse a failure to register. There are simply some things that cannot be forgotten. To allow forgetfulness to excuse a failure to register, would serve, in this context, as an incentive not to remember.
"The willfulness element of section 290 requires actual knowledge of the registration requirement. We take that to mean that the defendant has become actually aware of the duty to register. Once a person is made aware of the registration responsibility, he or she may not defend on the basis that the requirement simply `slipped' his or her mind." (Cox, supra, 94 Cal.App.4th at pp. 1376-1377, [115 Cal.Rptr.2d 123].)
[9] Certainly, if appellant was hospitalized or snow-bound at a remote location, his failure to appear at the police station and register would not have been done willingly. Here, however, appellant had the ability to do what the law required. He willingly  that is, willfully  chose to do other things for five days. Knowing his obligation and willfully choosing to do other things, he broke the law.
[10] Quoting from the concurring opinion in a Florida appellate case, the dissent avers that "[s]imply as a matter of common understanding, there is no doubt that `merely forgetting to do an act does not equate with intentionally and willfully refusing to do it.' [Citation.]" Even if one may agree with this thought in the abstract, it does not address the statute at issue. The question before us is not whether "merely forgetting" to register equates with "intentionally and willfully refusing" to comply with the statute. Section 290 does not require that a defendant intentionally and willfully refuse to register; it simply requires that he or she willfully fail to do so. (Garcia, supra, 25 Cal.4th at pp. 751-752, 107 Cal. Rptr.2d 355, 23 P.3d 590.) A willful failure to do something is not the same thing as a refusal. The first simply requires knowledge of the required act; the second implies an active intent to frustrate its fulfillment. We can find no authority for the proposition that by using the word "willful," section 290 requires proof of this kind of active intent to thwart the statute by refusing to perform the registration obligation. To the contrary, no such specific intent is required for commission of a general intent crime like the one at issue in this case. (People v. Johnson, supra, 67 Cal.App.4th at pp. 71-73, 78 Cal.Rptr.2d 795.)
[11] In Hagen, the Supreme Court affirmed a defendant's conviction for three felony counts of willfully making and subscribing a tax return without belief in its material truth under Revenue and Taxation Code, former section 19405, subdivision (a)(1) (now Rev. & Tax. Code, § 19705, subd. (a)(1)). The pertinent statute "punished as a felony any person who `[w]illfully makes and subscribes any return, statement, or other document, that contains or is verified by a written declaration that it is made under the penalties of perjury, and that he or she does not believe to be true and correct as to every material matter.' [Citation.]" (Hagen, supra, 19 Cal.4th at pp. 658-659, 80 Cal.Rptr.2d 24, 967 P.2d 563.) Although the Supreme Court held that the use of the word "[w]illfully" in the statute "created an exception to the common law presumption that ignorance or mistake of law is no defense" (id. at p. 660, 80 Cal.Rptr.2d 24, 967 P.2d 563), the court was careful to emphasize that any such exception to the usual common law rule was limited to a person's misunderstanding or ignorance of the civil, nonpenal provisions of statutes imposing penal sanctions. "Neither this court nor the federal high court, however, has suggested that mistake or ignorance of the law operates to excuse what would otherwise be criminal falsehoods. We hold only that the failure to comply with tax laws is not a violation of a particular penal statute, former [Revenue and Taxation Code] section 19405[, subdivision] (a)(1), if the noncompliance is not willful, i.e., if the taxpayer, in good faith, misunderstands or is ignorant of the pertinent provisions of the tax law. We agree malefactors cannot be permitted to redefine the criminal law by their own subjective misconceptions of that law. For that reason, mistake or ignorance of the penal law is almost never a defense. There are a number of circumstances, however, in which violation of a penal statute is premised on the violator's harboring a particular mental state with respect to the nonpenal legal status of a person, thing, or action. In such cases, the principle is `firmly established that defendant is not guilty if the offense charged requires any special mental element, such as that the prohibited act be committed knowingly, fraudulently, corruptly, maliciously or wilfully, and this element of the crime was lacking because of some mistake of nonpenal law.' [Citation.] . . . [T]he mistake must be one of nonpenal law. [Citation.] Thus, a taxpayer may defend against a section 19405(a)(1) charge on the basis, for example, that he mistakenly believed certain deductions were proper under the tax laws, but not on the basis that he was unaware it was a crime to lie on one's tax return." (Hagen, supra, 19 Cal.4th at pp. 660-661, 80 Cal. Rptr.2d 24, 967 P.2d 563, fn. 4.)
[12] "We reemphasize that the quantum of evidence the People must produce in order to satisfy the corpus delicti rule is quite modest; case law describes it as a `slight or prima facie' showing. [Citations.] This minimal standard is better understood when we consider that the purpose of the corpus delicti rule is `to protect the defendant against the possibility of fabricated testimony which might wrongfully establish the crime and the perpetrator.' [Citation.] As one court explained, `Today's judicial retention of the rule reflects the continued fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically.' [Citation.] [¶] Viewed with this in mind, the low threshold that must be met before a defendant's own statements can be admitted against him makes sense; so long as there is some indication that the charged crime actually happened, we are satisfied that the accused is not admitting to a crime that never occurred." (People v. Jennings, supra, 53 Cal.3d at p. 368, 279 Cal.Rptr. 780, 807 P.2d 1009.)
[13] At the time appellant hypothetically provided his date of birth to the authorities, there was no criminal investigation of his failure to register because he had not yet committed that offense. A pre-offense statement which does not admit guilt of a crime or intent to commit one does not in any way implicate the essential rationale of the corpus delicti rule, which is simply to preclude the admission of an extrajudicial confession of a crime that never occurred. Thus, even if the ultimate source of the March S, 1950, birth date was appellant himself, its use would not contravene the purpose of the corpus delicti rule. (Cf. People v. Jennings, supra, 53 Cal.3d at p. 368, 279 Cal.Rptr. 780, 807 P.2d 1009.)
[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] Contrary to the suggestion in the majority opinion that the Florida statute at issue in Grumet v. State requires a willful "refusal" to support a violation (maj. opn. ante, p. 815, fn. 10), neither the term "willful" nor "refusal" appears in the Florida statute, which simply makes the failure to comply with the registration requirement a felony. (Fla. Stat. §§ 943.0435, 944.607; see Grumet v. State, supra, 771 So.2d at pp. 42-43.) The Florida court imposed the requirement of willfulness even though not stated explicitly in the Florida statute, whereas this court refuses to recognize that an inadvertent failure to comply is not willful even though willfulness is explicitly required by the California statute.
[3] As amended, subdivision (f) then read as follows: "Any person required to register under the provisions of this section who shall violate any of the provisions thereof is guilty of a misdemeanor. Any person who has been convicted of assault with intent to commit rape, oral copulation or sodomy, or of any violation of Section 286, 288, 288a, 289 or subdivision 2 or 3 of Section 261, and who is required to register under the provisions of this section who shall willfully violate any of the provisions thereof is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in the county jail. In no event does the court have the power to absolve a person who willfully violates this section from the obligation of spending at least 90 days of confinement in the county jail and of completing probation of at least one year."
[4] Subdivision (g)(2) of section 290 also applies to one who has a prior conviction or juvenile adjudication for failing to register "and who subsequently and willfully violates any requirement of this section." Subdivision (g)(3) likewise provides that one determined to be a mentally disordered sex offender, or one found not guilty by reason of insanity of a sex crime, "who willfully violates any requirement of this section" is guilty of a misdemeanor for the first offense and is guilty of a felony for "any second or subsequent willful violation of any requirement of this section." Subdivision (g)(8) provides that "[a]ny person who is required to register under this section who willfully violates any requirement of this section is guilty of a continuing offense."
[5] In contrast, under subdivision (g)(6) of section 290, except as provided in subdivision (g)(5) one who "willfully fails to update his or her registration" every 60 days as required in some circumstances is guilty of a misdemeanor punishable by imprisonment for not more than six months.
[6] Section 7, subdivision 1 continues with the following additional sentence: "It does not require any intent to violate law, or to injure another, or to acquire any advantage." However, the court concluded that it was error to have instructed the jury that ignorance of the law is no excuse, and that "[i]n the registration act context, the jury must find actual knowledge of the act's legal requirements." (25 Cal.4th at p. 754, 107 Cal.Rptr.2d 355, 23 P.3d 590.)

I agree fully with the majority that the decision in Garcia is consistent with section 7. (Maj. opn. ante, pp. 809-810, fn. 4.) However, the majority's comments in footnote 4 underscore its failure to distinguish between the need to establish a purposeful failure to register as required by section 290 subdivision (a)(1)(D) (consistent with the first sentence of section 7) and the absence of any need to establish that the defendant knew that failure to register would render him subject to the criminal penalties imposed by section 290 subdivision (g)(2), or intended to violate subdivision (g)(2) (consistent with the second sentence of section 7). See the discussion at pages 809-810, post.
[7] The Supreme Court observed in Garcia that "the meaning of the term `willfully' varies depending on the statutory context" (25 Cal.4th at p. 753, 107 Cal.Rptr.2d 355, 23 P.3d 590) and the ambiguous nature of this term has been repeatedly recognized (see, e.g. . United States v. Bishop (1973) 412 U.S. 346, 352, 351, 93 S.Ct. 2008, 36 L.Ed.2d 941 [willful "is a word of many meanings, its construction often being influenced by its context"; "the word `willfully' has a meaning in tax felony statutes that is more stringent than its meaning in tax misdemeanor statutes"]; Kwan v. Mercedes-Benz of North America, Inc. (1994) 23 Cal.App.4th 174, 182, 28 Cal.Rptr.2d 371 [the concept of willfulness "is not one easily captured in a single, uniformly applicable formula"]; Jeremy M. Miller, Mens Rea Quagmire: The Conscience or Consciousness of the Criminal Law? (2001) 29 W.St.U. L.Rev. 21). All definitions of the term, however, include either an intent to do or fail to do a particular act or bring about a particular result or at least a reckless indifference as to whether the result occurs. The grey area often centers around the sufficiency of reckless conduct. (Compare United States v. Bengimina (8th Cir.1974) 499 F.2d 117, 119 ["Willful cannot fairly be equated with careless or reckless. The denotation of willful is deliberate and intentional"] with Williams v. Carr (1968) 68 Cal.2d 579, 583-584, 68 Cal. Rptr. 305, 440 P.2d 505 [for purposes of automobile guest statute, "willful misconduct implies the intentional doing of something either with knowledge, express or implied, that serious injury is a probable, as distinguished from a possible, result, or the intentional doing of an act with a wanton and reckless disregard of its consequences"].) Under any definition, there is no doubt that unintentional acts or omissions are beyond the pale of what may be considered willful. There must be some element of conscious decision-making, which is not present when one has simply forgotten.
[8] This is precisely the analysis required by the California Supreme Court's decision in People v. Hagen (1998) 19 Cal.4th 652, 80 Cal. Rptr.2d 24, 967 P.2d 563 (Hagen), which the majority unsuccessfully struggles to distinguish. (Maj. opn. ante, pp. 816-817, fn. 11.) In Hagen, the Court pointed out that ignorance of nonpenal provisions of the tax law constitutes a defense to the willful filing of a tax return that the individual does not believe to be correct, whereas ignorance of the fact that filing a false return is punishable under a separate penal provision provides no such defense. (19 Cal.4th at pp. 660-661, fn. 4, 80 Cal.Rptr.2d 24, 967 P.2d 563.) Similarly, un-awareness that it is time to re-register as required by subdivision (a)(1)(D)  essentially a mistake of fact rather than a mistake of law  negates willfulness of a failure to register, while ignorance that section 290 subdivision (g)(2) makes the willful failure a felony provides no such defense. The Supreme Court carefully distinguished between awareness of what is required and awareness of the penal consequences of a failure to comply. The majority here fails to make this vital distinction. In Garcia, the Supreme Court held explicitly that ignorance of the registration requirements in section 290 is a defense. (Garcia, supra, 25 Cal.4th at p. 754, 107 Cal. Rptr.2d 355, 23 P.3d 590.)
[9] The majority's attempt to avoid the force of this analogy (maj. opn. ante, p. 816) instead reinforces its applicability. Contrary to the majority's unsupported assertion that forgetfulness does not provide a defense to a charge of perjury (maj. opn. ante, p. 816), the crime is not made out if one incorrectly testifies, for example, that he did not write a particular letter, having forgotten that he had in fact written the letter. (See People v. Sagehorn (1956) 140 Cal.App.2d 138, 149, 294 P.2d 1062; Smith v. Thomas (1898) 121 Cal. 533, 536, 54 P. 71.) While it is perjurious for a person aware of his uncertainty to testify positively that he did not write the letter, the fact is that people do forget entirely, and it is not perjurious to deny writing it if one is not conscious of uncertainty but is simply wrong because he has forgotten. Moreover, unlike failing to register, perjury requires the affirmative act of false swearing. Since affirmatively testifying falsely about a fact one has forgotten is not willful, it follows a fortiori that failing to perform an act one has forgotten is not willful. (See Garcia, supra, 25 Cal.4th at p. 752, 107 Cal.Rptr.2d 355, 23 P.3d 590.)
[10] Ohio Revised Code Annotated section 2950.05 provides in relevant part: "(E)(1) No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section shall fail to notify the appropriate sheriff in accordance with that division, [¶] (2) No person who is required to register a new residence address with a sheriff or with an official of another state pursuant to divisions (B) and (C) of this section shall fail to register with the appropriate sheriff or official of the other state in accordance with those divisions." New York Correction Law section 168-t provides in relevant part: "Any sex offender required to register or to verify pursuant to the provisions of this article who fails to register or verify in the manner and within the time periods provided for herein shall be guilty of a class A misdemeanor upon conviction for the first offense, and upon conviction for a second or subsequent offense shall be guilty of a class D felony."
[11] See generally, Earl-Hubbard, Comment, The Child Sex Offender Registration Laws: The Punishment, Liberty Deprivation, and Unintended Results Associated with the Scarlet Letter of the 1990s (1996) 90 Nw.U. L.Rev. 788.
[12] Revenue and Taxation Code section 19701 provides in part: "Any person who does any of the following is liable for a penalty of not more than five thousand dollars ($5,000): (a) With or without intent to evade any requirement of Part 10 (commencing with Section 17001), Part 11 (commencing with Section 23001), or this part or any lawful requirement of the Franchise Tax Board, fails to file any return or to supply any information required, or who, with or without that intent, makes, renders, signs, or verifies any false or fraudulent return or statement, or supplies any false or fraudulent information."
[13] Revenue and Taxation Code section 19706 provides that "Any person or any officer or employee of any corporation who, within the time required by or under the provisions of this part, willfully fails to file any return or to supply any information with intent to evade any tax imposed by Part 10 (commencing with Section 17001) or Part 11 (commencing with Section 23001), or who, willfully and with like intent, makes, renders, signs, or verifies any false or fraudulent return or statement or supplies any false or fraudulent information, is punishable by imprisonment in the county jail not to exceed one year, or in the state prison, or by fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment, at the discretion of the court, together with the costs of investigation and prosecution."
[14] As to the majority's reliance on footnote 4 in Hagen, supra, 19 Cal.4th at pages 660-661, 80 Cal.Rptr.2d 24, 967 P.2d 563, see footnote 8, ante.
[15] Title 8 United States Code section 1302, subdivision (a) reads: "It shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and fingerprinted under section 1201(b) of this title or section 30 or 31 of the Alien Registration Act, 1940, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days."
[16] Title 8 United States Code section 1305 requires aliens to provide written notice of any change of address to the Attorney General within 10 days of the change.
[17] See, e.g., Government Code former section 27495, section 27500 (jurors and witnesses ordered to appear at coroner's inquest are guilty of a misdemeanor only if they "willfully and without reasonable excuse fail[ ] to attend,") section 1320.5 (person charged with or convicted of a felony and released on bail is guilty of additional felony only if the person willfully fails to appear as required in order to evade the process of the court).
[18] As indicated above (ante, p. 826), no "painstaking legal and factual analysis of the evidence to ascertain the precise degree of [Barker's] forgetfulness" (maj. opn. ante, p. 812) is necessary, nor would "allowing forgetfulness as a defense place[ ] the burden on the prosecution to prove a negative  that the defendant did not forget the knowledge as claimed" (maj. opn. ante, p. 817). As with the prosecution of a violation of any statute penalizing the willful failure to perform a statutory obligation, the prosecution would bear the burden of proving that the defendant purposefully failed to do what the statute required As indicated below (post, pp. 831-832), a defendant's efforts to overcome evidence tending to show that a failure to perform was purposeful are often unavailing.
[19] Indeed, much of the evidence which the majority views as showing that Barker did not forget that it was time to register (maj. opn. ante, p. 811) can just as easily be viewed as supporting his claim that he did. The fact that he had repeatedly registered on time in the past, that he responded immediately when contacted by Officer Baccei, and that he candidly acknowledged having been advised of his registration obligations may well have been considered by the jury to show that on this occasion he had honestly forgotten that it was time to re-register.